Appeal of THE HOTEL DE FRANCE CO.          Docket No. 58.

Exhaustion of a leasehold acquired by a corporation in 1918 for capital stock is based upon the value of the stock when issued.

The value of a leasehold on a given date is a question of fact which must be determined in the light of the evidence in the record before the Board.

Where the term of the life of a leasehold can be accurately determined, the deduction for its exhaustion must be computed accurately in accordance with such term.

Corporate organization expenses are no part of the cost of a leasehold acquired at the time of such organization, and may not be included in the basis for the allowance for exhaustion.

Where it appears to the Board from the record that the deficiency determined by the Commissioner is incorrect the Board will, where possible, find the correct deficiency, whether greater or less.

Submitted October 13, 1924; decided October 27, 1924.

*M. L. Seidman, C. P. A.*, for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

The appeal involves the correct determination of income taxes for 1920 and 1921, particularly in respect of the amount of the taxpayer's deduction for the annual exhaustion of a leasehold. The issue is one of fact as to the cost of the leasehold to the taxpayer. Hearing was had, at which no witnesses appeared, and the evidence consisted of two contested affidavits offered in behalf of the taxpayer and the revenue agent's report containing facts agreed to by both parties.

FINDINGS OF FACT.

The Hotel de France Co. is a corporation of New York, organized on October 10, 1918, and has since that date conducted a hotel at 142 West Forty-ninth Street, New York City. It occupies the building under a lease expiring May 28, 1925, the rental being $30,000 a year. This lease was acquired by the taxpayer as one of the original assets for which its capital stock was issued.

In 1910 the lease was made for 15 years. The first lessee occupied the premises until August, 1918, when it became bankrupt and a receiver took over the business, including the lease. On October 9, 1918, pursuant to an order of the court, the receiver caused a public auction sale to be conducted of all the assets of the

business. These consisted of the leasehold in question and of a supply of liquors, both of which had been appraised for the receiver at $25,297.12. The only bidders at the auction were two, a representative of the creditors, who bid only enough to cover the liabilities, and an outsider, Delenne, who bid $32,000 for the leasehold and the liquors. This amount was allocated so that the liquors cost $8,997.12 of the price and the leasehold cost $23,002.88. It is said that the hotel before bankruptcy had acquired " a bad name," and was under police surveillance, but that Delenne had secured an assurance of " police protection."

Immediately after the purchase of the property, Delenne organized the taxpayer corporation to conduct a hotel. He took all or substantially all of the capital stock, in exchange for the leasehold and the liquors just purchased. These were the corporation's only original assets. The corporation issued $82,750 of capital stock. During the remainder of the calendar year 1918, and for the entire calendar year 1919, the corporation operated at a loss, and the net loss for 1919 was applied by the Commissioner against the net income of 1920 and the 1920 tax reduced accordingly. The taxpayer corporation continued to operate the business. On January 14, 1920—14 months after the auction sale and the organization of the corporation—Delenne sold all the stock of the corporation for $65,000.

The taxpayer made returns of income for the years 1918 and 1919 in which no claim for exhaustion of leasehold was made, there being no net taxable income for those years. For the years 1920 and 1921 the taxpayer returned net income of $12,511.57 and $7,127.79, respectively, and claimed a deduction in each of those years, in arriving at net income, of $13,104.38 for exhaustion of leasehold. The exhaustion so claimed was based upon an alleged value of $78,626.28 for the leasehold and a depreciation period of six years.

The Commissioner adopted the amount of $23,002.88 as the cost of the leasehold, to which he added $3,000 organization expenses, the total of which he permitted to be depreciated over a period of six years. This resulted in a deduction allowed of $4,333.81 for each of the years 1920 and 1921, and a disallowance of the greater amounts deducted by the taxpayer. On June 24, 1924, the Commissioner mailed to the taxpayer a deficiency letter asserting a deficiency for the years 1918 to 1921, inclusive, amounting to $4,271.21.

### DECISION.

The deduction for exhaustion of the leasehold is properly based upon $23,002.88, and should be computed over the period from October 10, 1918, to May 28, 1925. The proper deduction for each of the years in question is as follows:

| | | | |
|---|---|---|---|
| 1918 | $770.62 | 1920 | $3,467.77 |
| 1919 | 3,467.77 | 1921 | 3,467.77 |

The amount of the deficiency for these years is as follows:

| | | | |
|---|---|---|---|
| 1918 | None. | 1921 | $3,441.25 |
| 1919 | None. | | |
| 1920 | $1,557.16 | | 4,998.41 |

## OPINION.

STERNHAGEN. The taxpayer was entitled to a reasonable allowance for the exhaustion of its leasehold, based upon its cost. The issue here is as to the amount to be recognized as the cost. For the leasehold and liquors owned by Delenne it issued its capital stock, the value of which was of necessity the reflection of the value of the assets which it represented. In so far as these assets consisted of the supply of liquors, both parties agree that they were worth $8,997.12. The rest consists entirely of the leasehold, and the controversy is as to its value when it was acquired by the corporation. The taxpayer insists that it was worth $78,000, and the Commissioner urges that in the absence of satisfactory other evidence, the auction sale to Delenne must be taken as fixing the value. In this we agree with the Commissioner.

The taxpayer introduced two exhibits, one the statement of a notary public that the records of the city indicated an assessed valuation of the land on October 1, 1918, of $130,000 and of the land and building of $365,000, and on October 1, 1919, of $130,000 and $380,000, respectively. Its second exhibit, objected to as to competency and materiality, is the following affidavit:

I, G. Vasa Stoeber, being duly sworn according to law, depose and say:

That I am a real estate broker doing business in the city of New York, at 1476 Broadway (Forty-second Street, corner of Broadway);

That I have been engaged in the real estate business for the past 25 years, and am thoroughly versed with property values in New York City;

That in January, 1920, I negotiated the sale of the leasehold of the Hotel De France at 142 West Forty-ninth Street, New York City, from Mr. Ferdinand Delenne and his associates, who owned the stock of the Hotel de France Co., Inc., at that time, which is the owner of the leasehold on the premises 142 West Forty-ninth Street, New York City, to Mr. Herman Ecker and his associates;

That the stock was sold for $65,000 on January 14, 1920;

That in my opinion the figure of $65,000 does not represent the true value of the leasehold at that date, and the only reason that it was sold for a figure as low as that, was the fact that the hotel had been under poor management by the previous owners;

That in October, 1918, when the leasehold was purchased by the Hotel de France Co., the lease had one more year to run than it had in January, 1920, and for that reason it was worth so much more at that time;

That in my opinion the value of the leasehold at that date, measured by property values at that time, was at least $100,000.

That the price of $23,000, at which the leasehold was sold at the receiver's sale in October, 1918, could not be indicative of the real intrinsic value of the leasehold, since the property at that time was tainted with intereference by the New York City police;

That the leasehold, when acquired by the Hotel de France Co., was not only not threatened with any such interference, but also was assured of adequate police protection;

And that in my opinion, under those circumstances, the leasehold under ordinary proper management, and considering the period during which it was to be in force, was worth at least $100,000.

G. VASA STOEBER.

Sworn to and subscribed before me this 24th day of December, 1923.

JOSEPH KLEIN,
*Commissioner of Deeds, New York City.*

Term expires October 17, 1924.
Registers No. 24090; County Clerks No. 206.

Value is a question of fact. While the elements of value vary, and the evidence to establish the ultimate fact differs widely with the

circumstances of the thing to be valued, it is seldom that the problem can be satisfactorily solved by mere mathematical computation. Neither arithmetic nor accounting is of primary significance; they can only serve to help tie together the evidentiary facts. Alone they are helpless. Here we have one fact, and that is that the day before the corporation acquired the leasehold it had been bought at a public auction sale by a stranger dealing at arm's length from the seller for $23,002.88. Upon this fact we must rely until we are convinced by evidence of other facts that the sale is not significant of value.

We are asked to give no weight to the auction price because the sale was by a receiver and because Delenne's assurance of police protection gave the leasehold greater value in his hands than in the hands of the receiver. But it is not disputed that the receiver's sale was published and that full opportunity was given to all who would to bid. There were two bona fide bids and that of Delenne was the highest the market at that time would bring. The mere fact that the sale was made in behalf of a receiver in bankruptcy does not of itself demonstrate that it was inadequate to prove value. While it may be true that many receivers' sales are not reliable criteria of value, we can not say that this is a general principle. If a receiver's sale is not representative, it is because the circumstances so indicate; and we are not convinced that in this case such circumstances have been shown. Surely we may not say that Delenne's so-called police protection is a factor of value inherent in the leasehold. Every American citizen is entitled to it in the proper conduct of his legitimate business. The assessed valuations for city taxing purposes of the land and building are only remotely related to the actual value of the leasehold. The opinion of Stoeber, even were the affidavit competent evidence, is not convincing.

From Stoeber's affidavit and the fact of the sale of the capital stock in 1920 for $65,000, the value of $78,000—14 months earlier is sought to be established. But Stoeber says that the $65,000 was not representative of the true value in 1920 and that the $23,000 was not indicative of the real intrinsic value in 1918, for at both times in his opinion the leasehold was worth at least $100,000. This he appears to deduce from the facts of poor management of the hotel under Delenne's régime and of the questionable character of the place prior thereto. Stoeber reasons that because the stock of the corporation sold in 1920 for $65,000, the leasehold was worth more in 1918, since it had over a year more to run. By such reasoning it could be proven that when the lease was made in 1910 it was worth about $200,000, although nothing was given in consideration for it other than the promise to pay an annual rent of $30,000. We therefore are constrained to hold that of the evidence before us, the sale on October 9, 1918, for $23,002.88, best establishes the value of the leasehold on October 10, 1918, when it was acquired by the taxpayer.

This figure is the basis of the deductible allowance for exhaustion. The allowance should be computed so as to return to the taxpayer this cost at the end of the term of the leasehold—a computation which can be accurately made. It results in a deduction for each full year of $3,467.77, and for the two and two-thirds months of 1918

of $770.62. The Commissioner has added to the basis an amount of $3,000, which is admitted to be the expense of corporate organization. This is in error and consequently results in an excessive allowance. We have recomputed the tax accordingly. It results that the net loss of 1919 is reduced and the net income of 1920 and 1921 is increased. The deficiency thus becomes: For 1918, none; 1919, none; 1920, $1,557.16; and 1921, $3,441.25—a total of $4,998.41, which we find may properly be assessed instead of the deficiency asserted by the Commissioner of $4,271.21.