Appeal of **THE ROYAL COLLIERIES**　　　**Docket No. 233.**
　　　　　**COMPANY.**

> The lessee of coal lands is entitled under the Revenue Act of 1916 to the deduction of a reasonable allowance for exhaustion of leasehold based upon March 1, 1913, value or for depletion upon the same basis, either deduction being computed proportionately with the amount of coal mined in the taxable year.

Submitted November 25, 1924; decided January 27, 1925.

*James O. Tripp, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

This appeal is from the determination of a deficiency in income and profits taxes for the fiscal year ended March 31, 1917, amounting to $1,335.98. The facts are agreed upon by the taxpayer and the Commissioner.

#### FINDINGS OF FACT.

During the fiscal year ended March 31, 1917, the taxpayer was a corporation of Ohio and its income-tax return covered such fiscal year. It was during the taxable year the owner of leaseholds covering coal lands in Kentucky, which leaseholds it acquired prior to March 1, 1913, and which on that date had a value, as fixed by the valuation engineers of the Bureau of Internal Revenue, of $31,919.75. The recoverable tonnage of coal covered by the said leaseholds on March 1, 1913, was 1,550,000 tons.

During the fiscal year ended March 31, 1917, the taxpayer mined, produced, and sold 67,798 tons from said leased premises. In its original return for the fiscal year in question the taxpayer deducted $3,389.90 for the exhaustion of depletion allowance, which the Commissioner has disallowed.

#### DECISION.

The taxpayer is entitled for the fiscal year ended March 31, 1917, to a deduction of $1,396.19. The deficiency determined by the Commissioner is allowed in part and disallowed in part in accordance with the allowance of such deduction. The tax will be recomputed upon this basis and the amount of the deficiency will be finally settled on consent or on ten days' notice in accordance with Rule 50.

OPINION.

STERNHAGEN: The taxpayer on March 1, 1913, was the owner of leaseholds of coal lands. The parties agree that the value thereof on that date was $31,919.75 as found by the Commisisoner. We held in *Appeal of The Hotel DeFrance Company*, 1 B.T.A., 28, that a leasehold is an asset as to which a deduction may be taken of a reasonable allowance for its exhaustion. In the *Appeal of Grosvenor Atterbury*, 1 B.T.A., 169, we held that such a deduction should be based upon the value on March 1, 1913, where acquired prior thereto. Upon the authority of these decisions we hold in this case that this taxpayer may deduct a reasonable allowance for the exhaustion of its leaseholds based upon their March 1, 1913 value of $31,919.75.

The leases here under consideration, however, are unlike those in the cases already decided, for those leases were for a fixed period of time which measured their life. The rate of exhaustion therefore was measurable by the ratio of the taxable year to the term of the lease. Here there is no fixed term of years. There is, however, a lease of " all of the minable mineral stone coal underlying the " lands, and when the coal is exhausted the lease expires. Thus the life of the lease is exactly as long as the time required to mine the available coal. If the actual content could be accurately measured, and the rate of annual output precisely foreseen, the length of the life of the lease in time could be measured, and the same method of computation of the rate of exhaustion could be used as in time leases for occupation alone. But the content must be estimated and the rate of output may vary, and the only reasonable certainty is that the lease approaches its end proportionately with the amount of tonnage mined from the total content. This gives a reasonable working basis upon which to compute the annual exhaustion and the deduction therefor; that is, the proportion of the 1913 value which the tons extracted in the taxable year bears to the total tons estimated to be in the mine in 1913. In the present case we have the agreed figures:

| 1917 output | | total | | deduction | | 1913 value |
|---|---|---|---|---|---|---|
| 67,798 | : | 1,550,000 | :: | $x$ | : | $31,919.75 |

and we find that the deduction equals $1,396.19, and the depletion unit is approximately 2.06 cents a ton. This the taxpayer is entitled to take. It has, however, taken a deduction of $3,389.90 based upon 5 cents a ton of output instead of the 2 cents plus which results from the correct computation, and hence the excess must be disallowed and the tax based on the correct deduction of $1,396.19.

Much of the argument was concerned with the question whether under the Revenue Act of 1916 this lessee of mining property was or was not entitled to a deduction for depletion. Since the leaseholds in question are property subject to exhaustion as are other leaseholds, it is not necessary to consider any other ground upon which a deduction to reflect such exhaustion may be based. If the exhaustion of the taxpayer's property owned on March 1, 1913, is a proper charge against gross income in determining its taxable net

income, it matters little whether such charge is treated under the general classification of section 12—second of the Revenue Act of 1916 as " a reasonable allowance for the exhaustion  *  *  *  of property," or under the more specific classification of the same section as " (b) in the case of mines, a reasonable allowance for depletion thereof  *  *  *." However, if there were any doubt as to the right under the first provision quoted, it would still be clear, in our opinion, that the deduction is covered by the depletion provision. This has recently been decided in an opinion of Judge Sanborn, writing for the circuit court of appeals, eighth circuit, in *Lynch* v. *Alworth-Stephens Company*, 294 Fed. 190, which is now pending on certiorari in the Supreme Court of the United States. Whether, therefore, the taxpayer before us, deducts *exhaustion* of its leaseholds worth $31,919.75 on March 1, 1913, or *depletion* of its interest in coal mines worth the same amount, the amount of the deduction is the same; for either is measured by the rate of extraction of coal from the total content adopted as of March 1, 1913. When this capital sum is recovered through deductions and the estimated tonnage of that date is extracted, the deductions will, of course, cease.

Our decision, it will be seen, is based not on the fact that the taxpayer's asset on March 1, 1913, was a *leasehold* or a *mine* or a *natural resource* or some other particular kind or character of property. Much of the confusion arising from the income tax law is due to terminology, and our function is to look to the legal substance and to base our determinations on the statute and the true facts so far as they can be found. Here we find by virtue of the stipulation of the parties that on March 1, 1913, the taxpayer was the owner of property worth $31,919.75. It should not be deprived of the right to maintain this intact before subjecting its income to tax merely because this property is in the nature of a lease which covers coal lands. It is apparent that Congress intended the taxpayer to have such a deduction. It was at first believed by many that Congress was required by the Constitution to allow such a deduction because otherwise the tax on the proceeds of mining would have been a direct tax on capital. In 1913 Congress made express provision for a depletion deduction. And this deduction was broadened in the 1916 act so that it was practically unlimited. We can not ignore this clear intention of Congress and say that it impliedly withheld the deduction in cases where the property involved was an undeniable interest in coal lands covered by an enforceable agreement which everyone else is willing for all purposes to recognize as a capital asset. Such an exception should be clearly expressed to command recognition.

It is not entirely clear from the record before us whether the Commissioner has disallowed the entire deduction of $3,389.90 claimed by the taxpayer, acting upon the view that as a matter of law no deduction whatever is allowable; or has disallowed the deduction in part to the extent that it exceeds the 2.06 cents a ton determined by the valuation engineers. Our decision as to the deficiency will therefore be interlocutory and the determination of the deficiency will be later made in accordance with Rule 50.