HENRY G. BENDER and ELIZABETH BENDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Bender v. Commissioner
Docket No. 7792-74.
United States Tax Court
T.C. Memo 1976-161; 1976 Tax Ct. Memo LEXIS 240; 35 T.C.M. (CCH) 718; T.C.M. (RIA) 760161; May 24, 1976, Filed Norman S. Carr, for the petitioners. John P. Graham, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in Federal income tax as follows: Taxable year
Deficiency
1970
$ 5,637.92
1971
17,042.37
The only issue for decision is the amount allowable to petitioners as a charitable deduction under section 170 [1] with respect to three parcels of real estate contributed by them to a charitable organization in 1970. Decision of this issue turns on the fair market value of such realty at the time of the contribution. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation *241 of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Henry G. Bender and Elizabeth Bender, husband and wife, filed joint Federal income tax returns for the calendar years 1970 and 1971 with the Internal Revenue Service Center at Cincinnati, Ohio. At the time the petition in this case was filed, petitioners resided in Peninsula, Ohio. On January 23, 1945, Mr. Bender acquired from Mrs. Bender land comprising of 43.902 acres in Boston Township, Summit County, Ohio. On January 13, 1962, Mr. Bender acquired an adjoining parcel of land comprising of 30.2 acres from a third party. Of the total acreage of 74.102 acres thus acquired, the State of Ohio took a small segment of approximately 1.5 acres of the southern portion of these properties for the Ohio Turnpike in about 1953 and later in 1968 took an additional 36.283 acres for Interstate 271 (hereinafter referred to as I-271).
The three parcels, presently in controversy as to their fair market values, constitute the remainder of the original acreage after the condemnation by the State of Ohio for highway purposes. These three parcels have a total acreage of 36.309 acres and are not contiguous. *242 For purposes of identification, the three parcels are referred to as the 3 acre parcel, the 18 acre parcel and the 15 acre parcel. The "3 acre" parcel comprising 3.085 acres is triangular in shape, is located about 700 feet south of Boston Mills Road and adjoins the I-271 right-of-way on its entire south line. Although the parcel is landlocked, the grantors included, in the deed from Lloyd L. Bigelow and Dorothy Bigelow to Henry G. Bender, dated January 13, 1962, an "easement of a right of way, for the purposes of ingress and egress over and upon lands beloging" to the grantors. However, the description of this easement does not provide access to Boston Mills Road or to any other public road. This parcel is heavily wooded and much of it is crossed by a steep ravine, with a stream at the bottom. Two gas wells which were abandoned in 1961 or 1962 are located on the property. The "18 acre" parcel comprising 17.998 acres is also triangular in shape, and adjoins the I-271 right-of-way on its north and the Ohio Turnpike on its south. These highways converge at the western end of the property at an overpassunderpass. The third side of the property is bounded by land owned by *243 a third party. The parcel is completely landlocked. The only possible access would be off Riverview Road over a mile, approximately 5,600 feet, to the east. This property is separated from Riverview Road by three to six different parcels of land, depending upon the route chosen, each of the intervening parcels being owned by a different individual. Access through these parcels is made more difficult by the deep ravines, one of which is about 100 feet in depth, between the 18 acre parcel and Riverview Road. The property itself is predominantly wooded and quite hilly. Located on the parcel is a small artificial lake. At the western end of the property, I-271 is about level in elevation with the property, rising upward above the property on a steep grade toward the eastern portion. The Ohio Turnpike east and west lanes, to the south on the other side of the 18 acres, are at different elevations both elevated above this parcel. The "15 acre" parcel comprising 15.226 acres is irregularly shaped and located between Boston Mills Road and I-271. This property has approximately 1,530 feet fronting on Boston Mills Road. Of this frontage, approximately 800-900 feet is accessible *244 to the road. The remainder is within the steep ravine area below road grade. This parcel actually contains fewer acres in useable area because approximately 1.05 acres of the surveyed area lie in the dedication for the adjacent public road, Boston Mills Road.However, surveying boundaries from the center of the road is apparently the custom in this area and frontage on a public road is a prerequisite for the development of property as residential property. This parcel is also heavily wooded and its interior is cut in an east-west direction by a ravine with a stream at the bottom. At the time of the transfer on December 24, 1970, this property contained two one-room frame cabins. The first cabin measured 20 X 20 feet with a 4 X 4 feet addition for a chemical toilet and the second smaller cabin measured 12 X 17 feet with a 4 X 4 feet addition for a chemical toilet. Two gas wells are located on this parcel. The residential zoning requirements in Boston Township, in which the three parcels are located, require for residential use a minimum lot size of one acre with a minimum frontage of 100 feet at the building line and a minimum frontage of 75 feet at the street line, on a public *245 road, with a minimum front yard depth of 30 feet. All of the property in controversy is zoned residential. On December 24, 1970, petitioners deeded these three parcels of real estate, owned by them in fee simple, to the Akron Metropolitan Parks Board.For the taxable year 1970, petitioners claimed total charitable contributions in the amount of $62,037.43, including $58,500 for the value of the three parcels contributed to the Akron Metropolitan Parks Board. Due to statutory limitations, which are a matter of automatic computation, a charitable contribution of $33,581.57 was deducted for the taxable year 1970 and a charitable contribution of $28,455.86 was deducted for the taxable year 1971 as a carryover from 1970. In his notice of deficiency, respondent determined that the three parcels contributed to the Akron Metropolitan Parks Board had a fair market value, as of the date of the contribution, of not more than $20,100. As a result, respondent disallowed as a deduction $9,944.14 claimed in the taxable year 1970 and $28,455.86 carried over to the taxable year 1971.
As the ultimate finding of fact, we find that the fair market value, as of December 24, 1970, of the three parcels *246 of real estate contributed by petitioners to the Akron Metropolitan Parks Board was $33,200. OPINION On December 24, 1970, petitioners contributed three parcels of real estate totaling 36.309 acres to the Akron Metropolitan Parks Board.In petitioners' 1970 return, they claimed a charitable deduction for this donation of $58,500. The respondent disallowed this deduction and determined that the real property contributed had a value of $20,100. The only issue here is the determination of the fair market value of the three parcels of land on December 24, 1970, the time of their contribution to the Akron Metropolitan Parks Board. The respondent's regulations, section 1.170-1(c)(1), Income Tax Regs., provides: (c) Contribution in property--(1) General rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * The determination *247 of the fair market value of a piece of property at a given date is a question of fact to be resolved from a consideration and weighing of all relevant evidence in the record. Philip Kaplan,43 T.C. 663 (1965). Every piece of land is unique; and, in determining its fair market value, an examination must be made of the surrounding area and its usefulness, the topography, accessibility, the size and shape of the parcel in relation to its highest and best use, the development possibilities in the area, comparable sales of land in the immediate vicinity, the zoning requirements and all other relevant factors. The number of variables affecting the valuation of real estate and the possible weight to be given to each in a particular transaction make it impossible to determine the value of land with mathematical certainty. With respect to the valuation of the land and the other improvements, the record in this case contains extensive data relating to each of these three parcels of real estate. Both petitioner and respondent presented expert testimony concerning the value of these properties on the date of donation. The three appraisers testifying all based their estimates *248 of the fair market value of the properties donated by petitioners on sales of comparable real estate located in Boston Township and adjacent Richfield Township, principally on Boston Mills Road, Wheatley Road and Stine Road. These comparable sales were made both before and immediately after the petitioners' contribution of these three parcels to the Akron Metropolitan Parks Board. Al Spalding initially appraised these properties on November 25, 1970, at Mr. Bender's request, to value these properties for the charitable deduction. Mr. Spalding has been in real estate business since 1952 and has made appraisals for many banks, industries and other businesses in the area. He appraised the parcel containing 15 acres and two cabins at $30,000; the parcel containing 3 acres with easement right-of-way at $3,000; the parcel with 18 acres and pond at $9,000; and the salvage value of five gas wells at $9,500. His appraised value of the properties totaled $51,500. The value of the five gas wells was based totally on prices for new and used gas equipment furnished by the Wooster Tool and Supply Company as of December 2, 1970. For judging the speculative value of the used tubing, casing *249 and other equipment from the wells, Mr. Spalding used the data furnished him by Mr. Bender without considering the costs of salvage. No value was attributed to the possible production of the gas wells. Charles O'Malley, respondent's evaluation engineer, has been employed by the Internal Revenue Service in that capacity for 15 years. He appraised the properties in 1973 as of the date of the gift. He appraised the 15 acre parcel at $18,000; the 18 acre parcel at $1,800; and the 3 acre parcel at $300 for a total appraised value of $20,100. Philip Smith, the third real estate appraiser to value this property, has been a licensed real estate broker since 1948 and an independant fee appraiser for approximately 15 years. He has done many appraisals for state and local governments, industries and other businesses in the Akron area. He was employed by the Internal Revenue Service in February 1975 to conduct an independent appraisal of the three parcels of property as to their market value in December 1970. Mr. Smith was also employed in 1966 to appraise this property for the State of Ohio prior to its taking in 1968 of the 36.283 acres for I-271. To insure Mr. Smith's appraisal *250 for the Internal Revenue Service was independent, he was given no knowledge of respondent's prior evaluation and allowance. He appraised the 15 acre parcel at $20,300, $15,300 for the land and $5,000 for the improvements; the 18 acre parcel at $3,600; and the 3 acre parcel at $2,100. His appraised value of the properties totaled $26,000. Petitioners' claim of a charitable deduction is based primarily on Al Spalding's appraisal of the properties at $51,500. Of this amount, $9,500 is attributed to the gross salvage value of certain gas well equipment located on the properties in connection with the five gas wells. Mr. Spalding does not consider himself an expert in the oil and gas business. In making his estimate he relied entirely on the inventory given him by Mr. Bender and the value placed on new and used equipment of this type furnished by the Wooster Tool and Supply Company. No consideration was given the cost of salvaging such equipment or of closing the wells. Respondent made the determination that the gas wells and equipment did not contribute to the value of the land. The burden of proof is upon the petitioners to overcome the presumption of correctness attached to *251 respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). Having carefully considered all of the evidence presented and having relied more on certain evidence determined to be more persuasive, we find that the fair market value of the properties in issue on December 24, 1970, was $33,200. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩