PHILIP KAPLAN AND PEARL KAPLAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 562–63. Filed February 17, 1965.

*Kernal Freeman*, for the petitioners.
*James E. Caldwell*, for the respondent.

PIERCE, *Judge:* Respondent determined a deficiency in the income tax of the petitioners for their taxable calendar year 1958 in the amount of $1,037.75.

The only issue for decision is the amount allowable to petitioners as a charitable deduction under section 170 of the 1954 Code, in respect of certain personal property contributed by them to a charitable organization in 1958. Decision of the issue hinges on what was the amount of the fair market value of such personalty at the times when it was contributed.

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits therein identified, is incorporated herein by reference.

Petitioners are husband and wife, residing in Chicago, Ill. They filed a joint Federal income tax return for the calendar year 1958 with the district director of internal revenue at Chicago.

During 1958, an organization called the Angel Unit, Chicago Wesley Memorial Hospital, was a group of individuals associated with said hospital for the purpose of helping it procure funds to further the hospital's medical research program and to provide hospital services for indigent patients. As part of said fundraising program the Angel Unit sent out brochures to individuals, asking that they donate used property to the hospital.

The hospital had an exclusive working arrangement with a corporation known as Sheridan Art Galleries (hereinafter called the Sheridan Co.), in Chicago. The Sheridan Co. was "Basically * * * in the auction business, liquidating home furnishings and art objects." Under the above-mentioned arrangement, when a donor indicated that he wished to contribute property to the hospital, a representative of the Sheridan Co. would go to the donor's residence (or wherever the property might be located), make a list of the items of property to be contributed, and give an appraisal of what purported to be the fair market value of each item of such property. The Sheridan Co. would

then arrange to have the property brought to its auction rooms, where it either was there sold or was sent for sale to a gift shop maintained at the hospital. Under said arrangement between the Sheridan Co. and the hospital, the proceeds from the sales of contributed items sold by the company were divided, 75 percent to the hospital, and 25 percent to the company as sales commissions.

On the several dates of October 4 and 29, and December 13, 1958, petitioners donated a total of 57 items of personalty to the hospital, consisting principally of used household furnishings and clothing. Representatives of the Sheridan Co., after making a list of these properties, placed an aggregate appraised value thereon of $5,550. Substantially all of these 57 items were promptly thereafter sold by the Sheridan Co. at unrestricted auctions held in its showrooms during the months of November and December 1958, for the aggregate price of $459.50. The following tabulation shows the dates on which the properties were contributed by petitioners, the number of items involved in each of three lots, the amounts at which the items were appraised by the Sheridan Co., and the total prices at which substantially all of these items were sold by said company at its auction sales:

| Date contributed | Number of items | Amount at which appraised | Total selling price of items sold at auction |
|---|---|---|---|
| Oct. 4, 1958 | 36 | $4,435 | $328.50 |
| Oct. 29, 1958 | 20 | 915 | 126.00 |
| Dec. 13, 1958 | 1 | 200 | 5.00 |
| Total | 57 | 5,550 | 459.50 |

The following shows a representative sample of several of the items so sold, together with a comparison of the appraised values assigned thereto with the prices at which they actually sold at auction:

| Item | Appraisal value | Actual sales price |
|---|---|---|
| Contemporary 2-part divan | $400 | $35.00 |
| Pair of classic-style pedestals | 150 | 5.00 |
| Original painting signed by artist | 75 | 5.00 |
| Silk boucle drapes and valance | 250 | 10.00 |
| Brocaded wool comforter | 50 | 3.00 |
| 10 silk afternoon dresses | 200 | 5.00 |
| 5 men's suits | 500 | 5.00 |
| 5 pairs men's shoes | 50 | 2.50 |
| Contemporary design sofa bed | 300 | 12.50 |
| Cocktail table | 175 | 40.00 |
| Chair and ottoman | 200 | 5.00 |

The Sheridan Co. was an experienced auctioneering firm which had conducted an auction business at the same location in Chicago for approximately 28 years. It regularly advertised in the leading

Chicago newspapers the auctions which it conducted. It also published catalogs listing the items to be sold at particular auctions; and prospective buyers were permitted to examine the items listed in these catalogs for a period of about 2 days before the date on which the same were to be sold. The company endeavored to get the best price for each article offered for sale.

Petitioners, on their 1958 return, claimed a deduction for charitable contributions in the total amount of $6,810.75; and in this figure they included said appraisal amount of $5,550 for the 57 items contributed by them to the Chicago Wesley Memorial Hospital.

The respondent, in his statutory notice of deficiency, partially disallowed said claimed deduction; and he explained his action as follows:

The deduction of $5,550.00 claimed for contribution of property to Angel Unit— Wesley Memorial Hospital, is disallowed to the extent of $5,082.50 because it has not been established that the fair market value of the property contributed was in excess of $467.50. Therefore, your taxable income is increased in the amount of $5,082.50.

### FINDING OF ULTIMATE FACT

The aggregate fair market value of the 57 items of personal property contributed by petitioners to the Chicago Wesley Memorial Hospital in 1958 was $500 at the times when they were contributed.

### OPINION

The respondent's long-standing regulations (Income Tax Regs., sec. 1.170–1(c)–(1)) provide that if a taxpayer makes a contribution to a properly qualified charitable organization, and the "contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution." What the fair market value of a piece of property is at a given date is of course a question of fact, to be resolved from a consideration and weighing of all the relevant evidence in the record.

In the instant case, there is no question as to the charitable character of the donee, which was the Chicago Wesley Memorial Hospital. Nor is there any question that petitioners contributed the property to the hospital in the taxable year; or as to the identity of the 57 items of property involved. The only question is, What was the fair market value of the property at the times contributed?

Petitioners predicate their argument for a $5,550 value upon the appraisals which were made by representatives of the Sheridan Co. However, in the light of what the bulk of the property actually sold for, very shortly after it was contributed—$459.50—we are unwilling to accord any probative value to said appraisals. Indeed, from our

observation of petitioners' witness Jack Shore, who appraised all except 1 of the 57 items here involved, and from our consideration and weighing of his testimony, we are (to be blunt about it) convinced that the appraisal was nothing more than a sham which was devised to give color of legitimacy to grossly inflated valuation figures that the donors could use in claiming excessive deductions on their tax return. Indeed, when Shore was requested during the course of his testimony to explain why he had gone through the formality of making the appraisals at values which did not even approximate the sale prices for the several items, he candidly replied: "I think it was a disease, as I call it. * * * Prevalent all over America."

It is our opinion that the most persuasive evidence in this record as to the value of the overwhelming bulk of the 57 items here involved on the dates contributed, is the price at which most of these items were sold at auction shortly after the times they were contributed. This Court stated in the case of *The Hotel de France Co.*, 1 B.T.A. 28, 31, wherein the taxpayers sought to minimize the probative value of auction sale prices as evidence of fair market value:

Here we have one fact, and that is that the day before the corporation acquired the leasehold it had been bought at a public auction sale by a stranger dealing at arm's length from the seller for $23,002.88. Upon this fact we must rely until we are convinced by evidence of other facts that the sale is not significant of value.

And, in the same vein, this Court stated in *Stollwerck Chocolate Co.*, 4 B.T.A. 467, 471:

While sales at auction are not always the best criterion of value, and certainly are not conclusive, we believe that in this instance the actual value of the whole property is more nearly established by the auction sale than by any other testimony before us. * * *

It is our opinion, and we have found as an ultimate fact and we here hold, that the aggregate fair market value of all 57 items at the times contributed by petitioners to the hospital was $500—made up of $459.50 representing the actual sale prices for the items sold at auction by the Sheridan Co.; and $40.50 representing our opinion, based on our examination of all the evidence, of the fair market value of the few miscellaneous items that were sent to the hospital's gift shop. We further hold that, as to said 57 items, the petitioners are entitled to deduct said amount of $500 as a charitable contribution for the year 1958.

*Decision will be entered under Rule 50.*