JOHN A. RUPKE and ESTHER R. RUPKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ROGER N. WASSINK and ELLEN J. WASSINK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rupke v. Commissioner
Docket Nos. 642-72, 681-72.
United States Tax Court
T.C. Memo 1973-234; 1973 Tax Ct. Memo LEXIS 54; 32 T.C.M. (CCH) 1098; T.C.M. (RIA) 73234; October 23, 1973, Filed Peter W. Steketee and Donald F. Oosterhouse, for the petitioners in docket No. 642-72. Albert B. Doherty, III, for the petitioners in docket No. 681-72. Gary F. Walker, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: In these consolidated cases, the Commissioner determined deficiencies in petitioners' income taxes as follows: 2 Petitioners
Year
Deficiency John A. Rupke and Esther R. Rupke Docket No. 642-72
1967
$ 2,630.13
1968
4,118.73
1969
4,699.13
Roger N. Wassink and Ellen J. Wassink Docket No. 681-72
1967
5,689.10
1968
11,322.19
1969
11,668.05
Petitioners and the Commissioner have made certain concessions. The issues remaining for decision *55 are: (1) the fair market value of a wooden, cabinet-like object in 1968, when it was given to Calvin College; and (2) the fair market value of a painting in 1966, when it was given to Calvin College. [1]
FINDINGS OF FACT The stipulated facts are so found and are incorporated herein by this reference. Petitioners John A. Rupke (hereafter Rupke) and Esther R. Rupke are husband and wife whose legal residence was in Grand Rapids, Michigan, at the time they filed their petition in this proceeding. Their joint Federal income tax returns 3 for the taxable years 1967, 1968, and 1969 were filed on a cash basis with the director of internal revenue service center, Cincinnati, Ohio. Petitioners Roger N. Wassink (hereafter Wassink) and Ellen J. Wassink are husband and wife and resided in Grand Rapids, Michigan, at the time they filed their petition in this proceeding. Their joint Federal income tax returns for the taxable years 1967, 1968, and 1969 were filed on a cash basis with the director *56 of internal revenue service center, Cincinnati, Ohio. The Cabinet-Like Object In 1967, Rupke became interested in a wooden, cabinet-like object, owned by a dealer in Seattle, Washington. Rupke showed a picture of the object to Wassink, who also became interested in it. In early 1968, Rupke purchased the object for $3,000 and, in the spring of 1968, sold a one-half interest in it to Wassink for $3,000. In September 1968, Rupke and Wassink gave the object to Calvin College[2] in Grand Rapids, Michigan, with the stipulation that it could not be sold or traded for seven years 4 without the approval of three-fourths of the student body. The petitioners were aware of the tax consequences of the gift. On September 7, 1968, Rupke and Wassink had the object delivered directly from Seattle to Calvin College. After receiving the object, the college disassembled it and placed the pieces in a boiler room. Prior to trial, the object was reassembled and *57 relocated in a garage or service building. The object is massive. It weighs 1-1/2 tons and is 10 feet 2 inches high, 10 feet 4 inches wide, and 3 feet 2 inches deep. The object is comprised of a conglomeration of furniture parts and carved wood fragments. Those parts and pieces are various colors and various types of wood. Their ages vary, and some are as old as five hundred years while others are modern. Their quality varies, but most of the carving is extremely crude. Some of the older work has been required. The object is strange and unconventional and has no apparent utility. Disassembly and sale of the pieces would yield more proceeds than the sale of the object intact. If the object were disassembled, some pieces of it could be sold but others would be valueless. 5 In 1967 and 1968, big wood cabinets, smaller than petitioners' object but of superb workmanship and in superb condition, were sold at from $2,000 to $4,000 each. Rupke and his wife claimed a value of $47,500 for their one-half interest in the object as a charitable contribution, part of which was deducted on their 1968 income tax return and part of which was carried over into 1969. Wassink and *58 his wife claimed $20,000 for their one-half interest in the object as a charitable contribution on their 1968 return, but they increased the value of that one-half interest to $50,000 on their 1969 return. In his notice of deficiency, the Commissioner determined a $1,000 valuation for a one-half interest in the object. The Painting On November 8, 1965, Rupke purchased a painting for $1,000 in Vancouver, British Columbia. The next year, he gave the painting to Calvin College with the stipulation that it could not be sold or traded for less than $50,000. The painting was painted in the sixteenth century. It represents the work of a provincial artist and was not painted by a recognized artist or a master. It has been extensively damaged and repaired. 6 Rupke and his wife claimed a value of $22,500 for the painting and deducted $6,516.61 as a charitable contribution on their 1966 Federal income tax return. They carried over an unused claimed value of $15,983.39 from 1966 into the years at issue. ULTIMATE FINDINGS OF FACT In 1968, the fair market value of the wooden, cabinet-like object was $3,000. In 1966, the fair market value of the painting was $1,200. *59 OPINION They only questions presented are questions of fact: What were the fair market values of the painting and the cabinet-like object when they were given to Calvin College? See Philip Kaplan, 43 T.C. 663 (1965), and section 1.170-1(c) (1), Income Tax Regs.
Cabinet-Like Object In 1968, Rupke purchased the cabinet-like object from a dealer for $3,000, sold a one-half interest in it to Wassink for $3,000, and gave it to Calvin College. Petitioners valued the object at $95,000 and $100,000 on their 7 tax returns. The Commissioner determined that, in 1968, the object was worth no more than $2,000, and his expert testified that the object was worth no more than $300. During the trial, petitioners and their expert contended that the value of the object was $25,000 in 1968. Petitioners' expert testified that he had never seen anything similar to the cabinet-like object but argued that, if the object were disassembled, various pieces could bring a total sales price of $25,000. He did not attempt to catalogue those pieces, and he assigned values to only two pieces. The Commissioner's expert had bought and sold fifteenth and sixteenth century furniture, *60 old English furniture, and Italian and French furniture. He testified that he could not understand the purpose or utility of the object. He testified that the object was assembled from accumulated furniture parts and carved wood fragments. He considered the total effect grotesquely out of proportion and lacking in order. He testified that one or two of the pieces may have been worth $60 but that most of the woodwork was very bad. He testified that, in 1968, somewhat smaller objects representing superb workmanship and in superb condition were sold for as much as $4,000. 8 Petitioners seek to nullify the testimony of the Commissioner's expert by arguing that the expert testified to the object's value in 1966 and not in 1968. Their argument is based on the following portion of the transcript: Q [Counsel for the Commissioner]: What, in your opinion, is the fair market value of this item in 1966? A [Commissioner's Expert]: Well, I think if a person got $2 or $300 for it would be a financial genius. Petitioners made no objection to the question cited above but proceeded to cross-examine the Commissioner's expert to discredit his $300 valuation. Throughout the history *61 of this case, no one has ever suggested that 1968 was not the determinative year. Petitioners did not own the object in 1966. Elsewhere in the transcript, the Commissioner's expert made references to 1968. We believe that the reference to 1966 was a typographical error or a harmless, unintentional mistake which misled no one. We note that Rupke purchased the object for $3,000 within a few months of the gift. Petitioners have not convinced us that the purchase was a $22,000 bargain or that the value of the object appreciated drastically within those few months. 9 Accordingly, after a thorough consideration of the facts and testimony, we hold that the value of the cabinet-like object was $3,000 in 1968. The Painting In 1965, Rupke purchased a painting from a dealer in Vancouver for $1,000. In 1966, he gave the painting to Calvin College and claimed that it was worth $22,500. The Commissioner has determined, and his expert has testified, that the painting was worth no more than $1,200 in 1966. During the trial, Rupke and his expert contended that the painting was worth $15,000 in 1966. The $15,000 valuation is based on the contention of petitioners and their expert *62 that Gerolamo Da Ponte Bassano, a sixteenth century Italian, was the artist. Petitioners' expert has never bought or sold paintings by Bassano and has never seen a Bassano for sale. On the other hand, the Commissioner's expert has studied sixteenth century Italian paintings extensively and has bought and sold paintings by Bassano. Accordingly, we accept his testimony that, except for its age, the painting bears no resemblance to the work of Bassano or a member of his workshop. 10 Petitioners argue that the Commissioner's expert overstated the amount of damage to and restoration of the painting. Although the Commissioner's expert convinced us that damage and repair were extensive, we do not believe that he placed great emphasis on the condition of the painting. He stated that, because the painting was "a third, [or] fourth rate provincial painting," he would not change his valuation even if the painting were in perfect condition. We also note that Rupke paid $1,000 for the painting within a year of the gift. Again petitioners have not convinced us that the purchase was a bargain or that the painting's value appreciated drastically within the year. Accordingly, we hold *63 that, in 1966, the fair market value of the painting was $1,200. Decisions will be entered under Rule 50. Footnotes
1. The taxable year 1966 is not in issue, but the value of the painting in excess of the contribution deduction for that year determines the carryover, if any, into the years in issue. ↩
2. In these cases, the Commissioner raises no argument as to the qualification of Calvin College as a charitable organization within the meaning of section 170(c) of the Internal Revenue Code of 1954↩.