EDWIN F. GORDON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gordon v. Commissioner
Docket No. 4825-71.
United States Tax Court
T.C. Memo 1976-274; 1976 Tax Ct. Memo LEXIS 130; 35 T.C.M. (CCH) 1227; T.C.M. (RIA) 760274; August 26, 1976, Filed Thomas J. Donnelly, Jr.,E. Robert Gordon, and Robert H. Diaz, Jr., for the petitioner. James F. Kidd, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: 1965
$92,493.07
1966
148,202.85
1967
85,964.85
1968
4,750.22
As a result of lengthy negotiations, the parties have settled all issues by stipulation save one--the fair market value of a painting donated by petitioner Edwin F. Gordon to Concordia College in November 1966 as charitable contribution under section 170(a). [1]/ *131 FINDINGS OF FACT Petitioner Edwin F. Gordon was a legal resident of Pompano Beach, Florida, at the time his petition was filed. Petitioner filed a timely Federal income tax return for 1966 in which the values of various paintings, including the one in issue, were claimed as charitable contribution deductions. On November 1, 1966, petitioner made a gift to Concordia College, River Forest, Illinois, of a painting of a Crucifixion scene. The painting, which is ascribed to a 15th century Swiss artist, is on wood and measures 19 X 30-1/2 inches. The parties agree that this 1966 contribution to Concordia College is deductible under section 170. In making the gift, petitioner imposed certain conditions on the use of the painting which could result in a reversion of it to him. The parties have agreed that these conditions cause a 13.5-percent reduction in the fair market value of the painting determined without regard to such conditions. Sometime between 1951 and 1953, petitioner acquired the painting for approximately $5,000 at an auction held by a Chicago art gallery. Although petitioner made no personal investigation of the history of the painting or of its prior ownership, *132 he was assured by the gallery that it was a work of 15th century Swiss origin. Since its original production, the painting had been the object of extensive restoration work. On his 1966 Federal income tax return, petitioner deducted $20,000 as the value of the painting. He subsequently alleged that the value was $100,000 at the time of donation. Respondent requests this Court to find that the November 1966 value of the painting was not in excess of $500. OPINION Deductions for charitable contributions of property other than money are limited to the fair market value of the donated property as of the date of the gift. Sec. 1.170-1(c), Income Tax Regs. The issue involved herein is one of fact, to be resolved in the light of all the evidence, including the expert testimony. Daniel S. McGuire,44 T.C. 801, 806 (1965); Philip Kaplan,43 T.C. 663, 666 (1965). The expert testimony presented by the parties shows wide differences of opinion as to the painting's value and authenticity. Petitioner offered the testimony of Dr. Kurt Riedler, an expert in the art of Switzerland. After examining a photograph of the painting, Dr. Riedler concluded that *133 it was done by the "Swiss master of the Crucifixion" around 1420 A.D. Based on his conversations with several Swiss art collectors, he expressed the opinion that the painting had great historical significance and could be sold for approximately 500,000 Swiss francs, or a sum of approximately $115,000. Respondent supported his determination of a much lower value by the testimony of two American art experts, Dr. Alfred Bader and Victor D. Spark. After examining the painting, Dr. Bader expressed the view that its authenticity was questionable, and he summarized his evaluation as follows: It's just a decoration. It's not a work of art. No reputable museum would accept this painting as a gift. * * * It's so clumsy--the drawing is so bad. It's a painting that wants to be something else. Dr. Bader concluded that the value of the painting was within the range of $500 and $1,000 as of the crucial date. Mr. Spark's testimony shows he also has low regard for the painting. Mr. Spark emphasized that he thought various portions of it were poorly drawn and that it has no artistic beauty. However, he expressed the opinion that the work was most likely painted late in the 15th century. *134 He valued the painting at $5,000, commenting that it was quite possible that it could be sold for such a price for reasons other than its artistic quality. This wide range of values is the result of many factors, not the least of which is the subjective opinion of the three experts. Seemingly, Dr. Riedler relied upon the possibility that a willing buyer who would purchase the painting for $115,000 could be found. He based this opinion on information obtained from unnamed Swiss art dealers. Respondent's witnesses disagree as to the authenticity of the painting as a Swiss production, but agree that it lacks quality in workmanship and overall esthetic value. Based on a careful consideration of the entire record, including all the expert testimony, we find that the value of the painting was $12,500 in November 1966, without regard to the conditions attached to the gift. Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.