T.C. Memo. 1996-92


UNITED STATES TAX COURT


DORIS F. RABENHORST AND ALVIN P. RABENHORST, SR., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23931-93.                    Filed February 29, 1996.


<u>Robert R. Casey</u>, for petitioners.

<u>Joseph Ineich</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, <u>Judge</u>:    Respondent determined a deficiency of $33,833 in each petitioner's Federal gift tax for 1988. The sole issue for decision is the fair market value of certain stock which petitioners gave to their children in 1988.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein. At the time the petition was filed in this case, petitioners resided in Baton Rouge, Louisiana.

FINDINGS OF FACT

Petitioners are husband and wife and have four children. Prior to December 1988, Mr. Rabenhorst was a principal shareholder of Rabenhorst Life Insurance Co., Inc. (RLIC), located in Louisiana. For Federal estate and gift tax planning purposes, Mr. Rabenhorst desired to shift ownership of RLIC to his children. In furtherance of this objective, he initiated a sequence of yearly gifts of RLIC stock to his children in 1988. On December 12, 1988, Mr. Rabenhorst transferred a total of 3,048 shares of RLIC stock to his four children (the 1988 stock transfer). Each donee received 762 shares. On their timely filed Federal gift tax returns for 1988, petitioners elected, pursuant to section 2513,[1] to treat each gift as having been made one-half by Mr. Rabenhorst and one-half by Mrs. Rabenhorst. On his Federal gift tax return for 1988, Mr. Rabenhorst reported a tax due in the amount of $1,465.11. On her Federal gift tax return for 1988, Mrs. Rabenhorst reported a tax liability of

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

$971.62. Petitioners paid the amount of tax reported on their returns.

In calculating the fair market value of the stock making up each gift, petitioners relied upon an appraisal prepared by Jerry Willis (Willis). Willis, a former chief examiner for the Louisiana Department of Insurance and owner of a private consulting practice located in Baton Rouge, Louisiana, was hired by petitioners' son, David Rabenhorst, for the purpose of conducting the appraisal. At the time he hired Willis, David Rabenhorst was RLIC's secretary and treasurer. A copy of Willis' appraisal was attached to Mr. Rabenhorst's Federal gift tax return for 1988.

The appraisal report which Willis prepared for the 1988 stock transfer is dated June 10, 1988. Hence, the Willis appraisal preceded the date of the actual gifts by approximately 6 months. In preparing this appraisal, Willis examined RLIC's five most recent annual financial statements and considered RLIC's assets, premium growth, and the growth of reserves and surplus. In reaching his appraisal value, Willis also considered sales of other private insurance companies. After a consultation with David Rabenhorst, Willis elected to factor into his appraisal a discount rate of 35 percent in order to account for the stock's minority interest. Using RLIC's financial data as of December 31, 1987, Willis determined a discounted per-share value

for the 1988 stock transfer in the amount of $385.  Willis'

computation is as follows:

| | | |
|---|---|---|
| Capital | $310,000 | |
| Special surplus | 1,000 | |
| Unassigned surplus | 5,579,972 | |
| Mandatory securities valuation reserve | 636,475 | |
| Subtotal | | $6,527,447 |
| Plus: | | |
| 1.5 x annual premium income | 2,659,323 | |
| Subtotal | | 9,186,770 |
| Less: | | |
| 35% discount | 3,215,370 | |
| Total discounted value | | 5,971,400 |
| Total discounted value | 5,971,400 | |
| Divided by: | | |
| Shares outstanding | 15,500 | |
| Discounted per-share value | | $385 |

In October 1990, petitioners' tax counsel complied with an

earlier request and provided an agent for respondent with a

written explanation of Willis' computation of the discounted per-

share value for the 1988 stock transfer.  The principal focus of

this correspondence concerned the 35-percent minority interest

discount factor and the addition of 1-1/2 years' annual premium

income.

In 1992, in reaction to respondent's having initiated an

examination of petitioners' 1988 gift tax returns, petitioners'

tax counsel hired David B.H. Chaffe III (Chaffe), of Chaffe &

Associates, Inc., to conduct a second appraisal of RLIC and the

1988 stock transfer.  Chaffe's appraisal report was provided to

petitioners' tax counsel in early 1992 and concluded that the discounted per-share value of the 1988 stock transfer was $167.98.[2]  After receiving Chaffe's report, and based upon his finding of a lower discounted per-share value, petitioners' tax counsel prepared, and petitioners filed, amended Federal gift tax returns for 1988.  Mr. Rabenhorst's amended return requests a refund of $1,465.11, while Mrs. Rabenhorst's amended return requests a refund of $971.62.

Respondent determined that the discounted per-share value of the 1988 stock transfer was $445.  Accordingly, respondent further determined a gift tax deficiency against each petitioner in the amount of $33,833 for 1988.

## OPINION

Section 2501(a) provides the general rule that Federal gift tax will be imposed upon the value of property transferred by gift during each calendar year.  The value of a gift of stock is the stock's fair market value on the date the gift is made.  Sec. 2512(a); sec. 25.2512-2(a), Gift Tax Regs.  Fair market value is defined generally as the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts.  United States v.

---

[2]The Chaffe appraisal was subsequently revised to adjust for computational errors.  The revised report concludes that the discounted per-share value of the 1988 stock transfer was $176.13.

Cartwright, 411 U.S. 546, 551 (1973); sec. 25.2512-1, Gift Tax Regs. The fair market value of donated property as of a given date is a question of fact to be determined from the entire record. Symington v. Commissioner, 87 T.C. 892, 896 (1986).

In determining the value of unlisted stock, actual arm's-length sales of such stock in the normal course of business within a reasonable time before or after the valuation date are the best criteria of market value. Duncan Indus., Inc. v. Commissioner, 73 T.C. 266, 276 (1979). In the absence of arm's-length sales, the value of the stock is to be determined by taking into consideration the company's net worth, prospective earning power, dividend-paying capacity, and other relevant factors. Estate of Andrews v. Commissioner, 79 T.C. 938, 940 (1982); sec. 25.2512-2(f), Gift Tax Regs. Such other relevant factors include the goodwill of the business, the economic outlook in the particular industry, the company's position in the industry and its management, the degree of the control of the business represented by the block of stock to be valued, and the values of securities of corporations engaged in the same or similar lines of business that are listed on a stock exchange. The weight to be accorded such comparisons or any other evidentiary factors considered in the determination of a value depends upon the facts of each case. Sec. 25.2512-2(f), Gift Tax Regs. These factors cannot be applied with mathematical precision. Estate of Andrews v. Commissioner, supra at 941.

Rather, the weight to be given to each factor must be tailored to account for the particular facts of each case. Messing v. Commissioner, 48 T.C. 502, 512 (1967). This Court has recognized that the valuation of stock in a closely held family corporation is frequently a difficult question. Estate of McKitterick v. Commissioner, 42 B.T.A. 130, 136 (1940); Estate of Tompkins v. Commissioner, T.C. Memo 1961-338. We have also noted that the result is rarely satisfactory. Estate of McKitterick v. Commissioner, supra.

As is often the case when we are asked to resolve a valuation dispute, the gap separating the instant parties is substantial. Petitioners maintain that their original Federal gift tax returns for 1988 overstate their gift tax liability due to Willis' erroneous appraisal of the 1988 stock transfer. Petitioners, relying on Chaffe's appraisal report, now argue that the total value of the 1988 stock transfer was $536,844.24, or $176.13 per share. Respondent, on the other hand, rejects Chaffe's report and maintains that the value of the 1988 stock transfer amounted to $1,356,360, or $445 per share. Respondent's determination is based upon Willis' method of appraisal; however, her computation uses data obtained from RLIC's 1988 financial statements, rather than from the prior year's financial statements which were used by Willis. Respondent contends that the financial data gathered from taxable year 1988 better reflect RLIC's value for purposes of the 1988 stock transfer. After a

careful review of the record, we conclude that the discounted per-share value of the 1988 stock transfer is $296.

Respondent's argument is twofold. First, respondent contends that the values attributed to the gifts of stock on petitioners' original gift tax returns constitute admissions on their part and, as such, require "cogent proof" of incorrectness before such values can be reduced. See, e.g., Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989). Respondent also contends that Willis was better situated to determine the appraisal value of the stock transferred than was Chaffe.

Petitioners principally argue that they have carried their burden in establishing that respondent's determination is incorrect. While we agree with respondent that the values entered on petitioners' original returns constitute admissions on their part, we find petitioners' argument persuasive with respect to the fair market value of the 1988 stock transfer.

In Estate of Hall v. Commissioner, supra, we held that amounts reported on a Federal estate tax return are admissions and that lower values could not be substituted absent "cogent proof" that the reported values were erroneous. We have also applied this same principle to cases involving Federal gift tax returns. See Mooneyham v. Commissioner, T.C. Memo. 1991-178. In the present context, however, this cogent proof principle is essentially synonymous with the general burden of proof set forth in Rule 142(a). See generally Frazee v. Commissioner, 98 T.C.

554, 561-562 (1992).  Petitioners timely filed their original gift tax returns in April 1989.  In late 1990, petitioners' tax counsel twice corresponded with a revenue agent regarding those returns.  At some time subsequent to this correspondence, petitioners' tax counsel advised petitioners that their 1988 gift tax returns were being audited and that a deficiency was to be proposed.  Accordingly, in early 1992, petitioners responded to the actions of the Internal Revenue Service (IRS) by hiring Chaffe to evaluate, among other things, the 1988 stock transfer.  Upon receipt of Chaffe's results, petitioners filed their amended gift tax returns.

We can find nothing unusual about this sequence of events.  Respondent apparently argues that, because petitioners hired Chaffe to reevaluate the 1988 stock transfer after they were advised of the examination and proposed deficiency, we should be highly suspicious of the values petitioners now contend to be proper.  In light of the facts before us, however, we think petitioners' actions were typical under the circumstances.  Yet this does not mean that we attribute any greater degree of confidence to petitioners' recomputed values than we would have otherwise attributed had petitioners filed their amended returns prior to discovering that a deficiency was being proposed.  Petitioners must carry their burden of proof; otherwise, respondent will prevail.  See id. at 577.

Despite having attached a copy of Willis' appraisal to Mr. Rabenhorst's original gift tax return as support for the values used therein, petitioners now maintain that Willis was not qualified to conduct an appraisal of the 1988 stock transfer. In advancing this argument, petitioners maintain that Willis failed to consider Rev. Rul 59-60, 1959-1 C.B. 237, and section 25.2512-2(f), Gift Tax Regs.[3] Petitioners argue that the guidelines set forth in both the revenue ruling and Treasury regulation are mandatory, and Willis' failure to conduct his appraisal in accordance with such guidelines serves to establish that the values derived in his appraisal are erroneous. More specifically, petitioners argue that both Rev. Rul. 59-60, supra, and section 25.2512-2(f), Gift Tax Regs., require that stock prices of similarly situated publicly traded companies be considered when valuing the stock of closely held corporations such as RLIC. Petitioners contend that, unlike Willis' appraisal, Chaffe's appraisal was conducted in accordance with the guidelines set forth in Rev. Rul. 59-60, supra, and section 25.2512-2(f), Gift Tax Regs. In particular, petitioners argue that Chaffe considered stock prices of publicly traded life insurance companies in his analysis.

---

[3]Petitioners also cite sec. 2031(b), but as this section principally pertains to the Federal estate tax, we do not discuss it. We note, however, that sec. 2031(b) generally parallels Rev. Rul. 59-60, 1959-1 C.B. 237, and sec. 25.2512-1(f), Gift Tax Regs.

Respondent argues that neither Rev. Rul. 59-60, supra, nor section 25.2512-2(f), Gift Tax Regs., requires that stock prices of publicly traded companies be considered when valuing the stock of a closely held corporation. Rather, respondent maintains, consultation of such stock prices is unnecessary if alternative appropriate means of valuation are available. Respondent contends that Willis' credentials and experience in the insurance industry enabled him to prepare his appraisal without considering stock prices of publicly traded companies. Particularly, respondent maintains that Willis' appraisal was benefited by Willis' "intimate familiarity" with the sale of industrial life insurance companies located in Louisiana. In support of this contention, respondent explains that Willis had completed an appraisal, similar to the one in the instant case, for an industrial life insurance firm located in Arkansas immediately prior to being hired by David Rabenhorst to prepare the appraisal involved in the instant case. In contrast, respondent's argument continues, Chaffe's report lacks the benefit of such professional experience. In fact, respondent explains, prior to preparing the instant appraisal, Chaffe had never before prepared an appraisal valuation of an industrial life insurance firm. Respondent also explains that Chaffe's report is inherently flawed because of the dissimilarities between RLIC and the publicly traded life insurance companies used as comparables in his report.

Neither side has convinced us that its computation of the per-share stock price accurately reflects the true value of the stock transfer at issue, but petitioners have advanced the more convincing argument. With respect to petitioners' argument, however, we note that it is not without its shortcomings. Although we may choose to accept Chaffe's appraisal in its entirety, Buffalo Tool & Die Manufacturing Co. v. Commissioner, 74 T.C. 441, 452 (1980), we may also be selective in the use of any portion of such appraisal, Parker v. Commissioner, 86 T.C. 547, 562 (1986). We are particularly troubled by the brevity of Chaffe's report. Specifically, Chaffe's report does not provide a discussion of the computation or model used to derive the discounted per-share value of $176.13. Furthermore, in his report, Chaffe explains that he considered a variety of factors, but he does not elaborate to any significant degree as to what effect such consideration had on any particular variable involved in his computations. Similarly, Chaffe explains in his report that he considered the stock value of several publicly traded insurance corporations, but he failed to provide any explanation of how such share values influenced his calculations. We are similarly troubled by the financial dissimilarities between RLIC and the publicly traded firms used as comparables by Chaffe in his report. For example, the average premium income for the five comparable firms used in Chaffe's analysis was $150,020,000; RLIC's premium income in 1988 amounted to $2,406,000. Similarly,

the average net income and the average amount of life insurance in force of the five comparable firms were $18,922,000 and $7,344,000,000, respectively; RLIC's net income was $348,000 in 1988, and the amount of its life insurance in force was $50,221,000 for the same year. Making matters worse, despite these dissimilarities, Chaffe's report does not mention how and to what extent adjustments were made to account for such differences.

Section 4.02(h) of Rev. Rul. 59-60, 1959-1 C.B. at 242, cautions that it is necessary to exercise care when selecting companies that are to serve as comparables so as to avoid comparing inherently dissimilar companies that are otherwise in the same or similar lines of business. In light of the magnitude of the differences between RLIC and the publicly traded firms considered by Chaffe, along with the general lack of specificity of his report, we question the precision of his conclusion.

Petitioners improperly construe the text of Rev. Rul. 59-60, supra, and section 25.2512-2(f), Gift Tax Regs. Neither the ruling nor the regulation can be read to require that the share price of a closely held corporation be based upon share prices of publicly traded companies. Albeit both Rev. Rul. 59-60, supra, and section 25.2512-2(f), Gift Tax Regs., explain that the share price of publicly traded corporate stock is a relevant factor to be considered, both the ruling and regulation continue and explain that weight is to be accorded to all relevant factors

considered depending upon the facts and circumstances of each case.  See also Estate of Andrews v. Commissioner, 79 T.C. at 940; Messing v. Commissioner, 48 T.C. at 512.  It follows that the facts and circumstances of a particular case may be such that an appraiser accords no weight to such share prices. Accordingly, petitioners' argument in this regard is misplaced.

We are also troubled by respondent's argument that the discounted per-share value of the 1988 stock transfer was $445. Although we agree with respondent that it makes more sense to value a gift of stock made in December 1988 using financial data as of December 31, 1988, rather than December 31, 1987, we question whether the computation respondent used to perform such valuation was appropriate.  See Symington v. Commissioner, 87 T.C. at 896.  In addressing this matter we focus our attention on Willis, as it was he who created the model used by respondent to ascertain the discounted per-share value of the 1988 stock transfer.  We recognize that Willis has respectable credentials, but we are troubled by his unfamiliarity with relevant Treasury regulations and revenue rulings.  While such unfamiliarity does not in and of itself convince us that Willis was incapable of rendering an accurate valuation, it does raise some suspicion. We also question the accuracy of his appraisal in light of his testimony regarding two variables used in his computation: The minority interest discount and the annual premium increase.  With respect to the annual premium increase, Willis testified that he

elected to use a factor of 1.5, which he derived by splitting the difference between two factors used in recent valuation projects involving insurance companies with which he was familiar. Willis further testified that he was unfamiliar with the use of minority interest discount factors in conducting appraisals. In fact, Willis had never before valued a minority block of shares. While neither of these two matters alone is sufficient to cause us to conclude that Willis was unqualified to appraise the 1988 stock transfer, when they are coupled and viewed in conjunction with his unfamiliarity with relevant revenue rulings and Treasury regulations, we are inclined to question his appraisal skills. Simply splitting the difference between two premium increase factors seems to be a rather arbitrary way to calculate a critical variable. Additionally, it seems to us unusual that an individual who represents himself to be an expert appraiser lacks familiarity with a concept as common as minority interest discounts. Accordingly, in light of his questionable skills as an appraiser, the efficacy of Willis' model is suspect.

Petitioners argue in support of Chaffe's result by pointing to a redemption of RLIC stock that occurred in 1984. Petitioners maintain that in 1984 RLIC redeemed 5,000 shares of its stock from Mr. Rabenhorst's two cousins at a redemption price of $137.50. The redeemed shares were immediately distributed in the form of a stock dividend, and, as a result, the total number of issued and outstanding shares remained unchanged before and after

the redemption. Petitioners' argument continues as they explain that immediately after the redemption and subsequent stock distribution, the per-share value of RLIC's stock was $93.14. Based upon this postredemption share price of $93.14, petitioners contend that the $176.13 per-share value reached in Chaffe's report is reasonable because it accounts for growth in the amount of 89 percent. In contrast, petitioners argue, respondent's determination of a $445 per-share value is unreasonable because it requires the acceptance of a growth rate of nearly 400 percent.

Respondent argues that the redemption lacks probative value because of its remoteness to the 1988 stock transfer and because it involved family members. Because the redemption involved family members, respondent contends that it was not conducted at arm's length.

We are only partially convinced by petitioners' argument as it requires the acceptance of a value derived from a transaction that occurred nearly 5 years earlier as the basis for establishing the accuracy of the result obtained in the Chaffe report. While we agree with petitioners that a recent arm's-length sale of the subject property is probative of fair market value, we question whether and to what extent the remoteness of the redemption detracts from its probative worth. See Kaplan v. Commissioner, 43 T.C. 663, 665-666 (1965). We reject, however, respondent's argument that the redemption lacks

probative value simply because related parties were involved. It cannot be said that every transaction between related parties is "endowed with a conclusive presumption of suspicion". Messing v. Commissioner, supra at 511. Petitioners provided uncontradicted testimony regarding the redemption, and we believe that such testimony was credible. Under the circumstances, we also believe that the redemption retains probative value despite having occurred approximately 5 years before the 1988 stock transfer.

Having carefully studied the entire record in this case, and based upon the testimony and the appraisal documents relied upon by both parties, we find that petitioners have successfully established that respondent's determination is erroneous. However, based upon our examination of the evidence contained in the record, we decline to accept petitioners' valuation without first accounting for its shortcomings, as identified herein. Accordingly, we hold that on December 12, 1988, the fair market value of the 1988 stock transfer was $902,208, or $296 per share. In reaching this result, we give due consideration to Chaffe's appraisal report and the 1984 redemption. We also give due consideration to petitioners' overall credibility.

To reflect the foregoing,

Decision will be entered

under Rule 155.