ROBERT E. PETERS and RUTH E. PETERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peters v. Commissioner
Docket No. 5751-73.
United States Tax Court
T.C. Memo 1977-128; 1977 Tax Ct. Memo LEXIS 316; 36 T.C.M. (CCH) 552; T.C.M. (RIA) 770128; May 2, 1977, Filed *316 Value of five paintings donated to an art museum determined. John Campo, III, for the petitioners. Harry Beckhoff, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $15,052.61 in petitioners' 1969 income tax. The sole issue is the valuation of five paintings which Robert E. Peters (hereinafter petitioner) donated to an art museum. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Petitioner and his wife, Ruth, were residents of Scottsdale, Arizona, when they filed their 1969 income tax return and when they filed their petition in this case. On or about December 15, 1969, petitioner contributed five paintings to the Minnesota Museum of Art which he described [1] as follows: (a) "William *317 Frederick, Second Duke of Gloucester" by Sir William Beechey oil on canvas--56 1/4 inch X 44 inch (b) "The Lady from the Court of Francis II" by Francois Clouet oil on panel--40 1/2 inch X 31 inch (c) "Hercules and the Followers of Omphale" by Lucas Cranach, the Elder oil on panel--31 inch X 45 inch (d) "Girl with Rose" by Guillaume Fouace oil on canvas--62 1/2 inch X 37 inch (e) "After the Bath" by Berthe Morisot oil on canvas--33 inch X 18 inch Respondent concedes that petitioner made a charitable contribution; he disputes, however, the amount of that contribution. The conflicting values which the parties place on the five paintings are as follows: Petitioner
Respondent
(a) "William Frederick, Second
$19,500
$3,500
Duke of Gloucester"
(b) "The Lady from the Court
26,500
2,000
of Francis II"
(c) "Hercules and the Followers
32,000
2,500
of Omphale"
(d) "Girl with Rose"
3,500
100
(e) "After the Bath"
18,500
50
$100,000
$8,150
Petitioner is a collector of art objects but does not consider himself an art expert. In 1962, petitioner purchased *318 "William Frederick, Second Duke of Gloucester" from Charles Ensen and "Girl with Rose" from Brown and Bigelow. He purchased the other three paintings involved herein in 1963 and 1964 from Frederick Stern. The various art dealers furnished petitioner with documentary evidence of his purchases. In 1971, William B. Jones (hereinafter Jones), an Internal Revenue Service agent, contacted petitioner and asked him for his records pertaining to the acquisition of the paintings. Petitioner stated that he lost the records in his move from Minnesota to Arizona. Although Brown and Bigelow were still in business at the time of trial and Frederick Stern was in business for at least two years after Jones requested documentation, petitioner has never provided the Internal Revenue Service with duplicates of the original documents he lost. Petitioner estimated that he paid $11,000 each for the alleged Cranach and Clouet; he could not recall what he paid for the other three paintings. Petitioner has never provided the provenance of any of the paintings. Provenance is the history of a work of art; it may describe, for example, how a given work was commissioned and who owned it throughout the *319 years. Provenance is requested by reputable art appraisers, dealers, and auction houses. Provenance supports the authenticity of a work, thereby enhancing its value. William Beechey painted "William Frederick, Second Duke of Gloucester," a number of times. Respondent has conceded that the painting of William Frederick involved herein is by Beechey himself and not by one of his assistants. The value of English portraits diminished sharply from 1925 to 1969, the year of contribution. The portraits of subjects similar to William Frederick, painted by Beechey, were selling for approximately $1,200 to $2,500 when petitioner contributed his Beechey to the Minnesota Museum of Art. Petitioner ascribes "The Lady from the Court of Francis II" to Francois Clouet. Respondent disputes the authenticity of this work. The Clouets and Their Followers, by Moreau-Nelaton, is a recognized authority on the works of Francois Clouet. The painting involved herein is not listed in this reference work. Clouet paintings are very rare and difficult to document. An unquestioned Clouet might sell for as much as $1,000,000. Petitioner ascribes "Hercules and the Followers of Omphale" to either *320 Lucas Cranach, the Elder or Lucas Cranach, the Younger. [2] Respondent disputes petitioner's alternative attributions. The "Hercules and Omphale" theme was very common and frequently copied. Many versions of this theme exist today. Petitioner ascribes "Girl with Rose" to Guillaume Fouace. Respondent disputes the authenticity of this work. Fouace was known as a portrait and still-life painter and not a painter of nudes such as the painting involved herein. Genuine paintings by Fouace were selling for approximately $1,000 when petitioner contributed his alleged Fouace to the Minnesota Museum of Art. Petitioner ascribes "After the Bath" to Berthe Morisot, a well-known impressionist. Respondent disputes the authenticity of this work. This is a painting of a nude. Berthe Morisot was not known for her nudes. The painting's dark background is not generally characteristic of French impressionistic painting. The name Ben Fitz was on the back of this painting. There was an obscure American *321 artist named Benjamen R. Fitz who was painting at approximately the same time as Berthe Morisot. ULTIMATE FINDINGS OF FACT On the date of transfer, the various paintings involved herein had the following fair market values: (a) "William Frederick, Second
Duke of Gloucester"
$3,500
(b) "The Lady from the Court
of Francis II"
2,000
(c) "Hercules and the Followers
of Omphale"
2,500
(d) "Girl with Rose"
500
(e) "After the Bath"
200
OPINION The sole issue is the valuation of five paintings which petitioner donated to the Minnesota Museum of Art. Respondent concedes that petitioner made a charitable contribution pursuant to section 170, Internal Revenue Code of 1954. Respondent disputes, however, the precise amount of that contribution. He values the five paintings at $8,150 while petitioner values them at $100,000. As we have said before, valuation is inherently imprecise; the settlement process is more conducive to the proper disposition of disputes such as this. Messing v. Commissioner, 48 T.C. 502, 512 (1967). However, since the parties have given us the task of valuing these paintings, we will discharge *322 our duty. Some general statements are in order before we focus upon the paintings themselves. The issue is a question of fact to be resolved by weighing all of the relevant evidence in the record. Kaplan v. Commissioner, 43 T.C. 663 (1965). Petitioner has the burden of proving that the donated paintings had a fair market value in excess of the amount determined by respondent. McGuire v. Commissioner, 44 T.C. 801 (1965). Although the authenticity of four of the five paintings is in question, we decline to decide their authenticity. Mathias v. Commissioner, 50 T.C. 994 (1968). Although we do not decide the authenticity of the paintings, the very fact that the authenticity is in doubt acts as a depressant on value. Petitioner should have reasonably known, on the date of transfer, that the authenticity of four of the five paintings was in doubt. Mathias v. Commissioner, supra at 998-999. Comparable sales constitute evidence of value which we should consider. Mathias v. Commissioner, supra at 999. We emphasize that we have decided the values of these paintings after a careful review of *323 the entire record, giving special weight to the expert testimony presented by both sides. We feel no obligation, however, to review at length our evaluation of the experts' qualifications or the worth of their testimony. Finally, we note that although petitioner has the burden of proof, he has not provided any documentary evidence of the purchase price of the various paintings. While he may have lost his records when he moved from Minnesota to Arizona, two of the dealers from whom he purchased the paintings were still in business when the Internal Revenue Service first began questioning petitioner about his charitable contributions. We now turn to the valuation of the five paintings. Respondent has conceded that "William Frederick, Second Duke of Gloucester" is by William Beechey, as petitioner contends. Petitioner's expert, Harry Muir Kurtzworth, appraised this painting at $12,500. He considered it an "excellently painted" and "elegant Georgian portrait," in the realistic style of the period. Petitioner's other expert, Paul S. Kramer, valued the painting at $19,500. Perry T. Rathbone, respondent's first expert, valued the painting at approximately $2,000. Rathbone thought *324 the work was a workshop replica of insufficient quality to be by Beechey himself. Respondent's second expert, Victor D. Spark, thought the work was probably by Beechey, but noted that it was one of many replicas. He valued the painting at $3,500. The value of English portraits, such as this one, declined sharply in value between 1925 and 1969. Indeed, the value of other Beecheys, of similar subjects, were sold for between $1,200 and $2,500 when petitioner contributed his Beechey to the Minnesota Museum of Art. We think the fair market value of the Beechey is $3,500. Petitioner ascribes "The Lady from the Court of Francis II" to Francois Clouet; respondent disagrees. Petitioner's expert, Harry Wood, did not value this painting for petitioner; he did, however, ascribe it to Francois Clouet, although he admitted that Clouets are extremely difficult to document. Harry Kurtzworth described the painting as an excellent example of French Renaissance portraiture; he valued it at $20,000. Paul Kramer valued it at $26,500. Perry Rathbone thought the picture was the work of an inferior artist in the tradition of Clouet portraiture. According to Rathbone, the costume worn by the subject *325 postdates the period when Clouet was painting. He valued the painting at about $1,800. Victor Spark thought the painting was mediocre and most likely a workshop painting of a late 16th or early 17th century Flemish artist. He valued the painting at $2,000. The painting in question is not mentioned in The Clouets and Their Followers, a recognized authority on the Clouets. Experts on both sides agreed that Clouets are rare and difficult to document. We think the fair market value of this alleged Clouet is $2,000.
Petitioner ascribes "Hercules and The Followers of Omphale" to Lucas Cranach, the Elder or Lucas Cranach, the Younger. Respondent contends that it is either a bad copy or an imitation of a Cranach. Harry Wood presented slides to show that the painting was by Lucas Cranach, the Younger. Harry Kurtzworth, who valued the painting at $20,000, thought the work was in a style typical of Cranach, the Elder. Paul Kramer ascribed the work to Cranach, the Elder and valued it at $32,000. Perry Rathbone testified that the picture bore no resemblance to the work of Lucas Cranach, the Elder, except in general terms. He thought the artist misunderstood anatomy and poorly executed *326 the drapery on the figures. He valued the painting at about $2,000. Victor Spark did not think the picture was even good enough to be from the workshop of Lucas Cranach. He thought the drawing was very weak and that the faces of the two women in the painting were "absolutely dead pan." He valued the painting at $2,500. The "Hercules and Followers of Omphale" theme was very common and frequently copied. Many versions of this theme exist today. We think the fair market value of this alleged Cranach is $2,500. Petitioner ascribes "Girl with Rose" to Guillaume Fouace. Respondent disagrees, particularly since Fouace was not known for nudes, such as this, but for portraits and still lifes. Harry Kurtzworth thought the artist had effectively rendered the light and shade to define the figure, using a nearly impressionistic style to complete the composition. He valued the painting at $4,500. Paul Kramer valued the painting at $3,500. Perry Rathbone thought this was an inferior academic work and valued it at about $500. Victor Spark thought this painting was very silly and badly painted. He valued it at $100. Genuine paintings by Fouace sold for around $1,000 when petitioner *327 donated his alleged Fouace to charity. We think the fair market value of this painting is $500.
Petitioner ascribes "After the Bath" to Berthe Morisot, a well-known impressionist. Respondent disagrees. Harry Kurtzworth thought the painting was by Morisot in her early impressionistic style. He valued it at $22,500. Paul Kramer, also attributing it to Morisot, valued it at $18,500. Perry Rathbone said Morisot never painted "self-conscious academic subjects like this." He further said the work could not possibly be by Morisot and valued it at $200. Victor Spark thought the painting an outright forgery by some unknown third-rate painter which gave no hint of Morisot's style in its execution. He valued it at $50. This is the painting of a nude. Berthe Morisot was not known for her nudes. Furthermore, the painting's dark background is not generally characteristic of French impressionistic painting. Finally, respondent notes that the name Ben Fitz is on the back of the painting. Benjamen R. Fitz was an obscure American painter, working at approximately the same time as Berthe Morisot. We think the fair market value of this painting is $200. Decision will be entered under Rule *328 155.* Footnotes
1. Respondent disputes the authenticity of each of the paintings except the Beechey.↩
2. Petitioner ascribed this painting to Cranach, the Elder when he donated it to the Minnesota Art Museum. At trial, however, one of his experts ascribed it to Lucas Cranach, the Younger.↩