CLIFTON E. PETERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peterson v. Commissioner
Docket No. 1893-78
United States Tax Court
T.C. Memo 1982-438; 1982 Tax Ct. Memo LEXIS 306; 44 T.C.M. (CCH) 650; T.C.M. (RIA) 82438; August 2, 1982. *306 James A. Urdan, for the petitioner. James F. Kidd, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Amount
1972
$11,919.05
1973
17,433.40
1974
19,209.17
$48,561.62
The sole issue for decision is the valuation of various artworks which were the subject of charitable contributions. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Kenosha, Wisconsin at the time of filing the petition herein. In the early 1960's, petitioner began to collect ivory carvings. In 1967 or 1968, petitioner purchased five ivory carvings at an antique store in Bar Harbor, Maine, and a porcelain piece at a store in New York City. Petitioner is unable to establish a specific purchase price allocable to the items in dispute herein. In 1972-1974, petitioner donated the five ivory carvings to Carthage College, Kenosha, Wisconsin, and the porcelain piece to the Kenosha Public Museum. *307 The following schedule sets out the date of contribution of each item in dispute, the amount claimed by petitioner in his return as the fair market value of the item, the amount allowed by respondent, and the valuation of each item by respondent's expert John LaMarre (LaMarre) and petitioner's expert, Edward Tripp, (Tripp). Amount
Amount
Date
Claimed
Allowed
Item
Contributed
(Luedtke)
(Hyde)
LaMarre
Tripp
Tusk
12/18/72
$15,000
$1,500
$1,200
$14,500
Three Immortals
12/18/72
7,500
750
1,400
11,500
Figure on Horseback
12/23/73
65,000
1,000
1,000
18,000
Figure on Deer
12/12/74
87,500
1,500
2,500
48,000
Phoenix (2)
12/12/74
27,500
2,500
1,500
22,800
Porcelain Coach
12/12/74
15,500
750
750
*
Tripp was an experienced dealer in ivory carvings while LaMarre was an experienced appraiser. The relevant factors in valuing such artworks include the quality of the carving, its age, size, and present condition. Tripp based his valuation on the quality of the work and other factors relating thereto and whether such pieces were readily available on the market. By contrast, LaMarre *308 relied on the sale prices of comparables at auctions and which were described and sometimes illustrated in auction catalogs. However, the information provided in the catalog relating to such artworks is somewhat skimpy and often inaccurate. The comparables he selected were generally not similar to the piece in question and he did not personally inspect the comparables. Petitioner relied on John Luedtke's appraisal of the various items with respect to the amount of charitable contribution claimed on his return. Respondent disputed the value of the items claimed on his returns on the advice of its employee, Jack Hyde (Hyde). Hyde was not an expert in valuing such items and he formulated his opinion after consulting with an expert and reviewing catalogs with information on comparable sales. He did not see the pieces when he valued them but was simply working from photographs. Based upon close examination by the Court in conjunction with the relevant testimony relating thereto, a description of each of the items in dispute is set out below. 1. Ivroy Carving--Boat Scene Subject Matter:
Eight immortals in boat with carved
ivory trees.
Age:
Mid-1800's
Origin:
China
Dimensions:
17-1/4" X 2-1/2" X 4-1/2"
Quality:
Hand done, good condition, all one
piece with possible exception of two
standing figures which may have been
added on later.
*309 2. Ivory Carving--Three Immortals Subject Matter:
Grouping of four Chinese figures including
longevity god standing on cliff (with
deer nearby) above figures of god holding
sceptor, god holding branch, and boy
holding peach; signed on bottom and on
back and includes Chinese poem.
Age:
Early 1800's
Origin:
China
Dimensions
11-3/4" X 4"
Quality:
Good condition, hand carved from one
block of ivory.
3. Ivory Carving--Figure on Horseback Subject Matter:
Myth of monk going on trip for bibles
at direction of goddess Quan Yin;
goddess of mercy sends monkey-headed
man and pig-headed buddha for protection
on trip; old man carries supplies for
trip in bags; unusual motif for ivory
carving.
Age:
Early 1800's
Origin:
China
Dimensions:
17" X 7" X 10"
Quality:
elaborate hand made carving on solid
ivory base; no machine marks; rider and
horse broken and repaired before contributed
to Carthage College.
4. Ivory Carving--Figure on Deer Subject Matter:
Longevity god, Shou Lao, riding deer,
holding a staff of life and peach
branch; scene also depicts boy holding
peach and beauty goddess holding
wine vessel.
Age:
Early 1800's.
Origin:
Chinese or Japanese
Dimensions:
21-1/2" X 7-1/2" X 12-1/2"; ivory base
3-1/2" thick
Quality:
Excellent, undamaged; figure carved from
one block of ivory as cross-hatch pattern
discernible on outer layer indicates.
*310 5. Ivory Carving--Phoenix (2) Subject Matter:
Pair of ivory Phoenix birds standing on
rock with flowers; not unique
Age:
1880's
Origin:
China
Dimensions:
13" X 4-1/4"
Quality:
Good but some damage to comb on one of the
bird's head; hand done from solid ivory--
no machine tool marks; some painting.
6. Porcelain--Marriage Coach of Napoleon Subject Matter:
Napoleon and his bride are in coach,
drawn by four horses; one man leads
the horses, driver holds reins and two
footmen are in rear of coach; Napoleon's
arm are emblazoned on door of coach.
Age:
1928-1935
Origin:
Germany (A. Kister)
Dimensions:
11-3/4" X 26-1/2" X 7-3/4"
Quality:
Good but art work is plain, not elaborate, common
motif, readily available; style of four
horses identical; part of coach transfer
printed, not painted.
Miscellaneous:
Similar item sold for $1,600 in Milwaukee
gallery; Kenosha market for art is not higher
priced than the Milwaukee market
OPINION The issue for decision is the fair market value of various artworks when they were donated to charitable organizations. [1] The works involved are five ivory carvings which *311 petitioner donated to Carthage College, Kenosha, Wisconsin, and one porcelain object donated to the Kenosha Public Museum. The regulations define fair market value as the price a willing buyer would pay to a willing seller, neither being under any compulsion to buy or sell and both having a reasdonable knowledge of relevant facts. Section 1.170A-1(c)(1), Income Tax Regs.Mauldin v. Commissioner,60 T.C. 749 (1973); Kaplan v. Commissioner,43 T.C. 663 (1965). Petitioner relies principally on the expert testimony of Edward J. Tripp (hereafter Tripp) in support of his claimed valuation of these artworks. [2] Tripp, an experienced dealer in ivories, offered his valuation of the five ivory carvings based upon a careful examination of the pieces and his wide *312 knowledge of the market value for such works. In contrast, respondent's chief expert witness, John LaMarre (hereafter LaMarre) valued the items by using the sales prices of "comparables" which were listed, described and sometimes illustrated in Sotheby Parke Bernet catalogs and sold at auctions in New York and Los Angeles. While their methods of valuation differed dramatically, both experts essentially agreed that relevant factors in valuing such works included the quality of the carving, its age, size and present condition. We have accordingly utilized these criteria in valuing each individual piece before us. Tripp's valuation of the items was generally 10 to 20 times greater than LaMarre's valuation. This wide gap in their valuation and techniques reflect their respective views regarding the uniqueness *313 of the items. LaMarre generally attempted to demonstrate that the items were readily available in the current market at a reasonable price by comparing them to auction sales of items that, in his view, were comparable. Tripp maintained, however, that the items were unique both in their quality and the subject matter depicted and could therefore command a higher figure in the current market. In our view, Tripp was more knowledgeable than LaMarre regarding the market value of the ivory carvings. He was an articulate witness who carefully and intelligently analyzed the items in question. In contrast, LaMarre's testimony was replete with inconsistencies in addition to other serious shortcomings. First, his comparables were generally not at all comparable. It is clear from his testimony that LaMarre had never seen the actual carvings that he considered comparable at any of the auctions either prior to or at the sale. In fact, some of the "comparables" were not even illustrated in the catalog. Additionally, while LaMarre testified on direct examination that he generally considered a catalog description to be accurate, he later conceded that such information is somewhat skimpy, is *314 sometimes inaccurate, and that he would not make an important purchase solely on the basis of catalog information. Without adequate knowledge of the quality of the works in the catalog, it is virtually impossible to descern a piece of comparable quality. [3]
In sum, while comparable sales are evidence of value in the art field (see Mathias v. Commissioner,50 T.C. 994, 999 (1968)), we are unconvinced that the method was properly utilized herein. The testimony of Jack Hyde (Hyde), an Internal Revenue Service employee who initially valued the carving for the respondent, was not helpful. Hyde testified that he had not even seen the carvings when he prepared his report but was simply working from small photographs. Moreover, Hyde readily conceded that he is not an expert in the field. Similarly, the testimony of John Luedtke (Luedtke), a witness for petitioner who valued the works for petitioner prior to the proceeding, must be discounted since he did not demonstrate an intimate knowledge of the current market values for such artworks. In addition to an analysis of the expert testimony, *315 there are other factors that bear on the valuation of the artworks. First, it seems very unusual that such valuable artworks would have been purchased in a lot purchase at a souvenir and antique shop in Bar Harbor, Maine.It is also surprising that petitioner had no bill of sale for the aggregate purchase or for the individual items purchased. While the prices undoubtedly appreciated substantially from the date of purchase (1967-1968) until the date of contribution, these absences in the record weigh against petitioner. Additionally, there is no evidence that petitioner insured the art works or took any special precautions to preclude their loss due to theft or fire. With these considerations in mind, we turn to the valuation of the six items at issue. 1. Boat Scene
Date
Amount
Amount
Contributed
Claimed
Allowed
LaMarre
Tripp
12/18/72
$15,000
$1,500
$1,200
$14,500
Tripp based his value on the fine quality of the carving and its excellent condition. His testimony reflects that the tusk was very thick and that the carving was all one piece with the exception of two standing figures which may have been added on at a later date. LaMarre, *316 however, testified that the piece was common and easily replaceable and that he had seen similar items at retails shops on Fifth Avenue in New York City. One of his "comparables" described in a Sotheby Parke Bernet catalog but not illustrated, was sold at an auction in Los Angeles on November 11, 1978 for $300. But LaMarre relied solely on the catalog description. The comparable was not illustrated and LaMarre conceded that he did not remember seeing the comparable at the auction in Los Angeles. [4]
In addition, LaMarre acknowledged at trial that the "comparables" listed in his earlier report were essentially the same as a carving of a bridge of elephants which was on display in the courtroom (but which was not one of the items in dispute). However, this carving was a fairly standard item which was machine produced and mounted on a wooden, not ivory, base. Based *317 on the Court's observation of the piece in light of the criteria generally agreed upon, the item was plainly of lesser quality and value than the items in dispute. Thus, LaMarre's testimony must be discounted. Based on the testimony as a whole and the consideration set out above, we conclude that the carving had a value of $6,500 at the time petitioner donated it to Carthage College. 2. Three Immortals
Date
Amount
Amount
Contributed
Claimed
Allowed
LaMarre
Tripp
12/18/72
$7,500
$750
$1,400
$11,500
Tripp again based his valuation on his view that the item was unique and its quality exceptional. In his opinion, the figure was carved by hand from a very heavy piece of solid ivory. He testified that the Chinese poem inscribed on the back of the piece indicated that it was an older piece not readily available on the current market. Respondent maintains however that LaMarre's testimony regarding comparable pieces indicates that there is no market for such a piece in the range that petitioner claimed. LaMarre testified that a Chinese carving described and illustrated in a Sotheby Parke Bernet catalog and which sold for $1,300 was of "comparable *318 quality." Aside from the fact that the comparable does not look at all similar to the item at issue, it is impossible to discern quality from an illustration. For instance, while Tripp testified that the item at issue was carved from a single piece of ivory, it is impossible to detect whether the "comparable" illustrated was produced from one piece or was in effect a patchwork job. Even assuming similar quality, we note that the carving of the three immortals was much taller and wider than that pictured in the catalog. Furthermore, LaMarre stated that the comparable and the carving of the three immortals were produced at approximately the same time. However, upon being informed that the date of the comparable as described in the catalog was different, he agreed with Tripp that such descriptions were sometimes inaccurate and that he generally did not believe them. Finally, while LaMarre noted that the carving of the three immortals was "superior" to the carving of the boat scene, he valued the former at only $200 more than the latter. Considering the evidence as a whole, we conclude that the carving of the three immortals had a value of $4,500 at the time of contribution. *319 3. Figure on Horseback
Date
Amount
Amount
Contributed
Claimed
Allowed
LaMarre
Tripp
12/23/73
$65,000
$1,000
$1,000
$18,000
Typically, the experts are in sharp disagreement as to the fair market value of this item. Both agree that the carving describes an old Chinese legend.Tripp testified that the myth was not well known and he had never seen a piece like it. Consequently, he claims that the piece was unique and quite valuable. He also testified that the quality of the piece was exceptional. Although he carefully examined the piece and has had extensive experience in valuing such pieces, Tripp failed to state how he arrived at his valuation figure. LaMarre presented two comparables which were sold at Sotheby Parke Bernet auctions for $3,000 and $1,300. One comparable, however, was similar only in that it depicted Chinese figures and the other solely because a horse was pictured. Based on both Tripp's and LaMarre's testimony, the carving in question was clearly more elaborate and detailed than the comparables introduced. However, as LaMarre pointed out, there was some repair to the piece that diminished its value below the $18,000 *320 assigned to it by Tripp. Tripp conceded that there was repair and at trial stated that he did not notice it at the time he originally inspected the piece. Petitioner presented no information as to when the repairs were made. Based on LaMarre's testimony that they had been made sometime earlier which we found accurate and convincing on this point, we believe the piece was damaged and repaired when donated. We therefore find that the fair market value of the piece was $8,000 at the time of donation. 4. Figure on Deer
Date
Amount
Amount
Contributed
Claimed
Allowed
LaMarre
Tripp
12/12/74
$87,500
$1,500
$2,500
$48,000
The figure depicts, among other things, Shou Lao, the Chinese god of longevity, sitting on a deer. The piece was quite large and as Tripp pointed out, the carving exquisite. It was undamaged and in excellent condition. Tripp demonstrated the cross-hatch pattern discernible on the outer layers of the base, thus indicating that the figure was carved from one block of ivory. LaMarre disputed this analysis, claiming that the base consisted of several pieces due to the various breaks in the ivory. Such nuances would significantly *321 affect the value. We believe the testimony of Tripp and feel that LaMarre was mistaken on this point. Additionally, there was some dispute as to whether the piece was Chinese or Japanese in origin but we were not convincingly shown how such fact would have an impact on value. LaMarre's "comparable" which he again did not actually examine affords no adequate basis for comparison. The setting seems totally different and even LaMarre felt that the item in issue was of Japanese origin while that illustrated in the catalog was of Chinese origin. This comparable was evidently selected since it also depicts Shou Lao, the Chinese god of longevity. But, absent a physical examination of the comparable, we refuse to adopt the "same god-same value" view apparently espoused by LaMarre.
In sum, the large disparity in the valuation provided by the experts is obviously due to their differences both as to the uniqueness of the piece and its quality. Considering the evidence as a whole and particularly the testimony of Tripp, we conclude that the carving had a value of $20,000 at the time of donation. 5. Phoenix Birds
Date
Amount
Amount
Contributed
Claimed
Allowed
LaMarre
Tripp
12/12/74
$27,500
$2,500
$1,500
$22,800
*322 Both Tripp and LaMarre agree that the figure of the phoenix birds is a common motif. Tripp described the quality of the carving as excellent. He noted that the piece was not filled as were some contemporary carvings but was produced from solid ivory. The lack of tool marks on the birds support Tripp's analysis. However, Tripp was not convincing to the extent he made any effort to even describe the pieces as unique. In addition, there appeared to be some damage to the comb on one of the bird's heads. LaMarre's comparables were not illustrated. He did testified that the figures were painted in order to conceal a poorly grained ivory. On this point, petitioner's expert offered no rebuttal. However, despite the apparent flaws, we feel that the quality and workmanship was above that attributed by respondent's expert, and, using our best judgment, hold that the carving of the phoenix birds had a fair market value of $3,500 on the date it was contributed. 6. Porcelain Coach
Date
Amount
Amount
Contributed
Claimed (Luedtke)
Allowed
LaMarre
12/12/74
$15,500
$750
$750
Petitioner's expert who valued this piece, John Luedtke, based his valuation *323 on the fact that it was manufactured by a reputable German manufacturer (Kister). In addition, his valuation was influenced by petitioner's estimated purchase price ($5,000) and the market for similar items. However, petitioner did not furnish us with a bill of sale for this item and his testimony relating to this purchase was vague and unconvincing. Luedtke conceded that a similar coach depicting the marriage coach of Napoleon with similar dimensions was sold at a Milwaukee gallery for $1,650. Luedtke testified that he did not believe that Kenosha artwork was higher-priced than in Milwaukee. LaMarre testified quite convincingly that the piece was neither unique nor of superior quality. He noted that part of the coach was transfer printed, not painted, and that this diminished its value. In his view, the style of the four horses was identical. His testimony comports to a large extent with the Court's view of this piece. We find that the fair market value of the porcelain coach was $1,000 at the time of contribution. Decision will be entered under Rule 155.
Footnotes
*. Did not appraise this item↩
1. The parties agree that the contributions are properly deductible as charitable contributions under the Internal Revenue Code, sec. 170(a), that the donees are qualified recipients under the Internal Revenue Code, sec. 170(c) and that the contributions are not subject to the limitations of Internal Revenue Code, sec. 170(e)↩.
2. Tripp's valuation of the items was generally lower than the amount claimed by petitioner on his return. Petitioner claims that since Tripp based his valuation on the wholesale market, his valuation should be adjusted upward. However, based on Tripp's testimony, we feel that he was well aware that he was valuing the works pursuant to a willing seller-willing buyer standard.↩
3. Cf. Holtzman v. Commissioner,T.C. Memo. 1980-174↩.
4. LaMarre's testimony was very misleading on this point. On direct, he testified that he was present at the auction, thereby implying that he examined the pieces. On cross-examination, however, he conceded that although he may have present at the auction, he did not remember seeing or examining the comparable.↩