RICHARD E. FRATES AND MARY LOU FRATES, ET AL., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frates v. Commissioner
Docket Nos. 197-84, 7811-84, 3736-85, 13416-85.
United States Tax Court
T.C. Memo 1987-79; 1987 Tax Ct. Memo LEXIS 75; 53 T.C.M. (CCH) 96; T.C.M. (RIA) 87079; February 9, 1987. Justin S. Holden, for the petitioners. Albert A. Balboni, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases [1] respondent determined the following deficiencies in and additions to petitioners' *76 income taxes: Additions to tax
Petitioners
Year
Deficiency
Sec. 6659 [2]
Sec. 6621(d)
Richard E. and
1978
$4,354
Mary Lou Frates
1979
20,899
1980
18,113
1981
11,600
$3,480
120% of adjusted
interest rate
1982
21,160
6,348
120% of adjusted
interest rate
1983
17,667
5,300
120% of adjusted
interest rate
Irwin and
Gloria Sparr
1980
22,079
1981
21,690
4,338
1982
21,245
6,373
At trial respondent filed motions for leave to amend his answers to allege that the Frates are liable for the addition to tax under section 6621(d) for the years 1978 through 1980 and that the Sparrs are liable for the same addition to tax for the years 1980 and 1981. On brief respondent requested that we assert the addition to tax *77 sua sponte under section 6621(d) against the Sparrs for 1982. After concessions, the issues for decision are: (1) whether petitioners are entitled to deductions for charitable contributions in excess of the amounts determined by respondent; (2) whether petitioners are liable for the addition to tax under section 6659 as determined by respondent, and (3) whether petitioners are liable for the addition to tax under section 6621(d). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. All of petitioners resided in Rhode Island at the time they filed their petitions. Petitioners are friends of Edward Shein, an art dealer in Providence, Rhode Island. About 1970 Shein began dealing in works of art by nineteenth century black American artists. A short time later, Warren Robbins, who was then the director of the Frederick Douglass Institute - Museum of African Art (the "Museum"), [3] asked Shein to assist the Museum in locating and acquiring artworks. Shein agreed to serve as the Museum's agent and with Robbins' knowledge proceeded to contact the owners of various pieces of art *78 by black artists. In a typical case Shein would advise the owner that he was seeking artworks for the Museum and undertake to negotiate a purchase of the owner's art. He would then sell the art to a third party with the understanding that Shein would assist the buyer in making a donation of the artwork to the Museum in the near future. Shein made a small profit on each transaction. Both sets of petitioners herein bought artworks from Shein under circumstances similar to those described above. The Frates acquired a painting entitled "Mountain Pool" (11" X 20") by Robert S. Duncanson in July 1977 from Shein for $15,000, and donated it to the Museum in December 1978. The Frates also bought a sculpture known as "Head of a Woman" by Edmonia Lewis in July 1978 from Shein for $16,000, and donated it to the Museum in December 1981. With respect to the above donations, the Frates claimed total charitable deductions on their income returns for the years [4] and in the amounts shown below. Return
Deduction
Artwork
For
Claimed
Mountain Pool
1978
$100,000.00
Head of a Woman
1981
$100,000.00
*79 The Sparrs acquired the painting "Falls of Minnehaha" by Duncanson in October 1977 from Shein for $13,000, and donated it to Howard University Gallery of Art in November 1982. [5] The Sparrs also bought from Shein an untitled landscape painting (22" X 32") by Edward Bannister in May 1979 for $7,500 and donated it to the Museum in December 1981. Finally, the Sparrs acquired from Shein a painting entitled "Haystacks" (26" X 21") by Henry Ossawa Tanner in December 1979 for $7,000 and donated it to the Museum in December 1980. With respect to the above donations, the Sparrs claimed total charitable deductions on their income tax returns [6] for the years and in the amounts shown below: Return
Deduction
Artwork
For
Claimed
Haystacks
1980
$65,000.00
Bannister's Landscape
1981
$75,000.00
Falls of Minnehaha
1982
$125,000.00
All of the above artists were major figures in nineteenth century *80 black American art. Their works have been displayed in numerous exhibitions over the years. As shown by the following schedule, paintings by Bannister, Duncanson, and Tanner have commanded a wide range of prices in sales in recent years. Edward Mitchell Bannister
Title
Size
Date
Buyer
Seller
Price
Study of a House
10" X 12"
4/1/75 Louis Glaser
E. Shein
$800.00
Shepherd w/Sheep
10" X 15"
4/1/75 Louis Glaser
E. Shein
1,500.00
Sunset
11" X 15"
4/1/75 Louis Glaser
E. Shein
1,200.00
Woodcutter
16" X 22"
4/1/75 Louis Glaser
E. Shein
2,500.00
Cloudy Sky
15" X 19"
4/1/75 Louis Glaser
E. Shein
2,000.00
Rocks at Newport
12" X 18"
4/1/75 Louis Glaser
E. Shein
1,500.00
Landscape
12" X 15"
10/6/76
M. Frank
E. Shein
8,000.00
Landscape w/Cow
16" X 22"
12/7/76
M. Frank
E. Shein
1,500.00
Landscape w/Two People
18" X 24"
2/1/77 Jesse Johnson Jr.
E. Shein
6,500.00
The Storm
6" X 8"
2/1/77 Jesse Johnson Jr.
E. Shein
10,000.00
Fishing Shacks
11" X 14"
5/1/77 Howard Lampal
E. Shein
2,650.00
Landscape w/Cows
14" X 20"
9/25/79
David Leven
E. Shein
16,000.00
Grove
16" X 22"
1979 [7]
3,500.00
New England Landscape
14" X 24"
1979 3,200.00
Fishing
12" X 20"
1980 W. Cosby
E. Shein
50,000.00
New England
14" X 24"
1983 15,400.00
On the Road to
Kinghtsville
28" X 36"
1984 25,000.00
*81 Robert S. Duncanson
Title
Size
Date
Buyer
Seller
Price
Twilight Scene
14" X 24"
2/77   Ronald Deal
E. Shein
$10,000.00
Remembrance of a Scene
Richard and
Near Auerbach
13" X 26"
10/1/77
Barbara Wong
E. Shein
12,000.00
Landscape w/Children
16" X 26"
10/1/77
Laurence Koffler
E. Shein
16,000.00
Landscape w/Lake
12" X 17"
5/78 Laurence Koffler
E. Shein
11,000.00
Waiting for a Shot
12" X 28"
1972 24,000.00
Falls of Minninopa
20" X 16"
1979 42,000.00
Arcadian View
28" X 54"
1980 70,000.00
Waiting for a Shot
12" X 28"
1983 48,000.00
Henry Ossawa Tanner
Title
Size
Date
Buyer
Seller
Price
The Thankful Poor
35" X 24"
1981
W. Cosby
$275,000.00
Virgin Mary
25" X 30"
1984
90,000.00
The deduction claimed by petitioners with respect to each piece of art is the appraisal placed on such pieces by David Driskell, Chairman of the Art Department, University of Maryland. In the deficiency notice, respondent determined *82 that the artworks had fair market values on the dates of the donation in the following amounts. Artwork
Notice of Deficiency
Bannister's Landscape
$30,000.00
Duncanson's "Mountain Pool"
$20,000.00
Duncanson's "Falls of Minnehaha"
$25,000.00
Tanner's "Haystacks"
$ 7,500.00
Lewis' "Head of a Woman"
$20,000.00
OPINION Charitable Contribution Deduction
Where a charitable gift is made in property other than money, the amount of the contribution is the fair market value of the property as of the date contributed. [8]Sec. 1.170A-1(c)(1), Income Tax Regs. The generally accepted definition of fair market value is that set forth in respondent's regulations as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value as of any given date is a question of fact to be resolved by considering all relevant evidence *83 [Kaplan v. Commissioner,43 T.C. 663, 665 (1965)] but respondent's determination in a notice of deficiency as to the fair market value of the property contributed is presumptively correct, and the taxpayer has the burden of proving otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).
At trial petitioners called two expert witnesses, David Driskell and Joan Michelman. Respondent called one, John Wilmerding. Their appraisals on the appropriate data of the fair market value of each piece of art involved in this case are set forth in the table below. Artwork
Driskell
Michelman
Wilmerding
Bannister's Landscape
$75,000
$35,000
$30,000
Duncanson's "Mountain Pool"
100,000
60,000
20,000
Duncanson's "Falls of Minnehaha
125,000
80,000
25,000
Tanner's "Haystacks"
65,000
35,000
7,500
Lewis' "Head of a Woman"
100,000
65,000
25,000
Petitioners' first expert witness, David Driskell, obviously has a wealth of knowledge about nineteenth century black American art and artists. He has taught at numerous universities, served on advisory panels at *84 several museums, and published extensively. In addition, he was in charge of the exhibition "Two Centuries of Black American Art," which toured major cities in the United States in 1976 and 1977. However, despite his outstanding background and experience, we are unable to accept his appraisals as accurate reflections of the prices at which the disputed artworks would change hands between a willing buyer and a willing seller. Instead, we are concerned that his figures reflect his personal opinion of what the artworks should be worth when consideration is given to the circumstances faced by the black artists in the nineteenth century. Mr. Driskell's testimony that these items are valuable in large part because they were done by black artists was contradicted not only by respondent's expert but by Joan Michelman, petitioners' other expert, who testified that an artist's color does not affect the value of his works in the marketplace. Because of Driskell's obvious lack of objectivity and extraordinarily high valuations in comparison to the other appraisals, we find his opinions to be of little help in our search for fair market value. Petitioners' other expert witness, Joan Michelman, *85 owns and successfully operates an art gallery in New York City. Consequently while she lacks the scholarly background of either Driskell or Wilmerding, she is the only expert witness with any direct experience in the marketplace. Michelman concluded in her report that the two Duncansons involved herein are "substantially more important" than Duncanson's "Waiting for a Shot," which she stated was sold for $48,000 in 1983. Michelman also concluded that "Haystacks" is a typical example of Tanner's religious period and that "Head of a Woman" is an important work of Lewis. With respect to the Bannister landscape, Michelman characterized it as one of Bannister's more important paintings and valued it only slightly higher than Ilmerding did. John Wilmerding, respondent's expert witness, is the Deputy Director of the National Gallery of Art and was a member of the art advisory panel that originally valued the disputed artworks for respondent. He has an impressive background in art, having received degrees from Harvard, taught at a number of highly-regarded universities, published a long list of articles and books on American art, and been involved in an equally long list of exhibitions. *86 In short, Wilmerding undoubtedly is a leading expert on nineteenth century American art. In his report Wilmerding generally agreed with Michelman's conclusion with respect to the Duncansons by stating that they were the best works within the group and that they were comparable in quality to Duncanson's best known painting, "Blue Hole, Flood Waters, Little Miami River." He also stated that, because "Falls of Minnehaha" represents an identifiable site, it would carry a slightly higher value than "Mountain Pool." With respect to the Bannister landscape, Wilmerding is of the opinion that it is characterized by weak drawing, as evidenced by the "crude and cardboard-like" trees. Similarly, in his opinion, Tanner's "Haystacks" is not very noteworthy, primarily because of its "indifferent subject" and murky execution. Last, Wilmerding notes that although Lewis was a very significant sculptor, bust sculptures do not command as high a price as full-size works because technically they are less demanding. After reviewing the entire record with particular attention being given to the testimony and reports of the expert witnesses as well as the evidence of other sales of artworks by these *87 artists, we are convinced that respondent's determinations with respect to the artworks by Bannister, Tanner, and Lewis are correct and should be sustained.We reach this conclusion primarily because Michelman failed to convincingly substantiate her appraisals of these items with evidence of comparable sales, which Wilmerding did. On the other hand, we are satisfied that petitioners have carried their burden of proof with respect to the Duncansons. Despite his own favorable opinion of the Duncansons, Wilmerding valued "Falls of Minnehaha" at only $25,000 and "Mountain Pool" at $20,000. However, "Falls of Minninopa," a Duncanson piece almost identical to "Falls of Minnehaha," was sold in 1979 for $42,000. First, Michelman concluded that the Duncansons at issue are more valuable than Duncanson's "Waiting for a Shot" which she stated sold for $48,000. Although she did not elaborate on the comparison and her opinion may be somewhat favorable, it is in line with the sale for $42,000 in 1979 of Duncanson's "Falls of Minninopa" which is almost identical to "Falls of Minnehaha." We believe, therefore, that Wilmerding's appraisals of "Falls of Minnehaha" at $25,000 and "Mountain Pool" *88 at $20,000 are too low. Our conclusion is that the fair market value of the former was $40,000 and of the latter was $35,000 on the dates of their contribution. Section 6659 Addition to Tax
The next issue is whether petitioners [9] are liable as determined by respondent for additions to tax under section 6659, because of underpayments which are attributable to valuation overstatements. A "valuation overstatement" is any overvaluation of property by 150% or more. From our findings, it is clear that petitioners overvalued each of their respective artworks by more than this amount. Consequently with the exception made by respondent with respect to the Sparrs, petitioners are liable for the addition to tax under section 6659. Section 6621(d) Addition to Tax
Last, we turn to the issue of whether petitioners are liable under section 6621(d) for the increased interest rate due after December 31, 1984 on substantial underpayments which are "attributable to 1 or more tax motivated transactions. *89 " A "substantial underpayment" is any underpayment of at least $1,000.00. A "tax motivated transaction" includes any valuation overstatement. (Sec. 6621(d)(3)(A)(i)). Since we have already found that petitioners' underpayments are attributable to valuation overstatements they are liable for the additions under section 6621(d) in any year in which they had an underpayment of $1,000 or more unless relieved therefrom by respondent's failure to timely assert a claim for the additions [10]. Although respondent inexplicably failed to assert the additions in a timely manner, we nevertheless are satisfied that the additions should be imposed in this case. First, Congress intended for us to raise the issue sua sponte when an addition under section 6621(d) is appropriate. Johnson v. Commissioner,85 T.C. 469, 483-484 (1985). Secondly, petitioners have not been prejudiced by respondent's failure to timely assert the additions since the only matter at issue was the valuation of the artworks, and petitioners had a full and fair opportunity to present their evidence on this issue. See *90 Johnson v. Commissioner,85 T.C. at 483-484. We conclude, therefore, that petitioners are liable for the addition to tax under section 6621(d) for any year in which they had an underpayment of at least $1,000. Decision will be entered under Rule 155
Footnotes
1. Cases of the following petitioners are consolidated herewith: Irwin Sparr and Gloria Sparr, docket Nos. 7811-84 and 3736-85. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
3. The Frederick Douglass Institute Museum of African Art is a museum within the Smithsonian Institution.↩
4. Carryovers to subsequent years were claimed.↩
5. This painting was donated to Howard University, rather than the Museum, because the Museum already owned another version of the "Falls of Minnehaha."↩
6. Carryovers to subsequent years were claimed.↩
7. There is no evidence in the record as to the identity of the buyers and sellers involved in several of these sales.↩
8. Section 170(e)(1) is not applicable here.↩
9. Respondent has conceded that the Sparrs are not liable for this addition in 1982.↩
10. With respect to the Frates, respondent determined the additions for 1981, 1982 and 1983 in the deficiency notice and asserted the additions for 1978 to 1980 on the day of trial in motions to amend his answers. With respect to the Sparrs, respondent asserted the additions for 1980 and 1981 in motions on the day of trial to amend his answers, and requested that we impose the addition suasponte↩ for 1982.