JOSEPH D. SHEIN AND JANET SHEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shein v. Commissioner
Docket No. 33287-84.
United States Tax Court
T.C. Memo 1987-329; 1987 Tax Ct. Memo LEXIS 329; 53 T.C.M. (CCH) 1292; T.C.M. (RIA) 87329; June 30, 1987. *329 Joseph D. Shein, pro se. Joellyn R. Cattell, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioners' income tax for 1979 in the amount of $32,736. After concessions, the sole issue to be decided is whether petitioners are entitled to deductions for charitable contributions in excess of the amounts determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners resided in Merion, Pennsylvania, at the time they filed their petition. On their 1979 individual income tax return petitioners deducted $45,000 for the charitable contribution of a painting of Silas Carle by Thomas Hicks (the "Hicks painting"), and deducted $17,000 for the charitable contribution of a painting over a lithograph titled "National Lancers with Reviewing Officers on Boston Common" painted by Fitz Hugh Lane (the "Lane painting"). Petitioners purchased the Hicks painting on June 6, 1977, for $10,000 and gave it to the University of Pennsylvania in December 1979. Petitioners *330 purchased the Lane painting in 1959 for $2,000 and gave it to the State Department in late 1979. Subsequent to the purchase of the Hicks painting by petitioners and prior to its contribution, a painting by Thomas Hicks in the collection of Stewart E. Gregory was sold for $62,500 (the "Gregory sale"). This was a landmark sale in American primitive art and increased the value of American primitive art paintings. In the notice of deficiency, respondent disallowed $47,000 of the $62,000 deduction claimed by petitioners as a deduction for the charitable contribution of both paintings. ULTIMATE FINDINGS OF FACT On the dates of the contributions, the Hicks painting had a fair market value of $25,000 and the Lane painting had a fair market value of $5,000. OPINION Where a charitable contribution is made in property other than money, the amount of the contribution is generally the fair market value of the property as of the date contributed. Sec. 1.170A-1(c)(1), Income Tax Regs. The generally accepted definition of fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell *331 and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. See also United States v. Cartwright,411 U.S. 546, 551 (1973). Fair market value as of any given date is a question of fact to be resolved by considering all relevant evidence. Kaplan v. Commissioner,43 T.C. 663, 665 (1965). However, respondent's determination in a notice of deficiency as to the fair market value of the property contributed is presumptively correct and petitioner has the burden of proving that the determination is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).[1]
We have previously said with regard to the issue of fair market value that: [E]ach of the parties shall keep in mind that, in the final analysis, the Court may find the evidence of valuation by one of the parties sufficiently more convincing than that of the other party, so that the final result will produce a significant financial defeat for one or the other, rather than a middle-of-the-road compromise * * * [Buffalo Tool & Die Manufacturing Co. v. Commissioner,74 T.C. 441, 452 (1980).]
*332 Giving consideration to the foregoing pronouncement in Buffalo Tool & Die, we find that petitioners have failed to prove that the ranges of values set forth by respondent's expert are in error, and thus conclude that the values of the paintings are within these ranges. At trial each party called one expert witness. Petitioners' expert witness valued the Hicks painting at $52,500 and the Lane painting at $17,000. Respondent's expert witness valued the Hicks painting in the range of $15,000 to $25,000 and the Lane painting in the range of $3,000 to $5,000. In Neely v. Commissioner,85 T.C. 934, 946 (1985), we stated, "although we will not reject expert evidence without objective reasons for doing so, one such reason is that the evidence provided by another expert is more persuasive." (Fn. ref. omitted.) Similarly, while we do not categorically reject petitioners' expert's opinion in the instant case, we find it less persuasive than the opinion of respondent's expert. Petitioners' expert obviously has a wealth of knowledge about eighteenth and nineteenth century art and artists. He is an art and antiques dealer with over thirty years of experience and is *333 a member of the American Society of Appraisers. In addition, he buys, sells, and appraises eighteenth and nineteenth century paintings. At trial, however, the following facts were elicited which cause us to attach less significance to petitioners' expert's opinion: his speciality is furniture and decorative arts; the paintings available in his shop range in price from approximately $125 to $8,000 or $9,000; he has sold no paintings in the last ten years in the $50,000 price range; he had only seen the works in question while visiting petitioners' house socially; he did not physically inspect the paintings when forming his professional opinion; he could not remember the names of dealers he called to obtain comparative prices; and, with respect to the Lane painting, his written report refers to a picture recently seen in a Boston gallery, but he could not recall the title, size or composition of that painting, or even whether it was signed. Furthermore, the written report filed by petitioners' expert was merely a letter consisting of three short paragraphs in which he referred to attached appraisals written by another antique dealer, Leon Stark. There is no indication in Mr. Stark's *334 appraisals whether he inspected the actual works in question. The Stark appraisal of the Hicks painting was dated December 9, 1980, one year after the date of the contribution of the painting, and does not indicate that the appraisal was being made of the value at the time of the contribution. Indeed, the record fails to advise us of the purpose for which either of the Stark appraisals was made. Although petitioners' expert states in his written report that Leon Stark is an "authority" on Thomas Hicks, the Stark appraisal states that, Edward Hicks, the grandfather of the subject, and Thomas Hicks were brothers. Respondent's expert testified that Thomas Hicks and Edward Hicks were first cousins. This contradiction brings into question Leon Stark's ability to adequately describe the provenance of the work, a significant factor in that both petitioners' expert and respondent's expert rely on the provenance of the painting in their respective opinions. In summary, the written report of petitioners' expert, which was filed late, was cursory, and petitioners' expert did not adequately elucidate his report in his testimony. Respondent's expert, on the other hand, owns and operates *335 two galleries where the price range of paintings offered is from $3,500 to over $250,000. As part of the preparation of his report, he inspected each work in his professional capacity, both visually and with an ultra-violet light. He also engaged in background research into each of the artists and, with respect to the Lane painting, was able to find a recorded sale, fairly contemporaneous to the date of the contribution of the Lane painting. Respondent's expert testified that while the sale of the Gregory painting had a significant impact on prices, the value of the Hicks painting would not have increased over 500 percent [2] from the time it was bought by petitioners in June 1977 until it was donated two and a half years later in December 1979. He testified that without the Gregory sale, a ten to twenty percent appreciation each year would have been normal. He stated in his report that because some similar works at the Gregory sale brought prices ranging between $7,000 and $33,000, it was his opinion that "in the context of 1979 and the interest generated by the successful Gregory sale, an appraisal of $25,000 for this particular painting would be aggressive (on the high side) *336 given the limitations of condition, the overall darkness of the painting, and the discoloration." He therefore valued the Hicks painting at somewhere between $15,000 and $25,000. With respect to the Lane painting, respondent's expert testified that another of the six versions of this work had been offered at auction in 1979 at a prominent auction house. The probable selling price had been estimated at between $2,500 and $3,500, but the painting did not even reach its "reserve," usually a figure which is two-thirds of the low estimate, or in this case $1,500. Even so, respondent's expert stated in his report that he was willing to aggressively value the work for its historical aspects at between $3,000 and $5,000. The Court believes that respondent's expert has been impartial, thorough, and professional in his appraisal of these works, factors lacking in the appraisal by petitioners' expert. However, as previously noted, we do not dismiss the opinion of petitioners' expert categorically. Rather, we give some weight *337 to his valuation by adopting the upper limits on values set by respondent's expert in his ranges of possible values. We therefore find that the value of the Hicks painting at the time of its contribution was $25,000, and that the value of the Lane painting at the time of its contribution was $5,000. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners' expert valued the Hicks painting at $52,500 at the time of the contribution, an increase of 425 percent from the $10,000 paid by petitioners.↩